THE STATE v. HOPPE.

1. **Criminal law:** INDICTMENT: DESCRIPTION OF PROPERTY. The description, in an indictment for larceny, of the property stolen " as bank bills, commonly denominated national currency, the number and denomination of which are to the jury unknown, of the amount and value of six hundred and fifty dollars," was held to be sufficient.

2. ———: LARCENY: IDENTITY OF STOLEN PROPERTY. The identity of bank bills, charged to have been stolen, may be established by circumstances, as well as by positive proof of their date, number, or denomination.

*Appeal from Dubuque District Court.*

FRIDAY, SEPTEMBER 25. ·

ON the 17th of November, 1873, an indictment was presented against the defendant, charging that on the 29th day of August, 1873, he " did feloniously steal, take and carry away divers bank bills, commonly. known and denominated national currency, of divers denominations, the number and denomination of which is to the grand jury unknown, of the amount and value of six hundred and fifty dollars, which said bank bills circulated and passed as money, and which were then and there the property and in the possession of one J. J. Pfiffner."

In December, 1873, defendant was tried, found guilty of stealing five hundred dollars, and sentenced to imprisonment in the penitentiary for two years. Defendant appeals. ·

*Wilson & O'Donnell*, for appellant.

No argument for the State.

DAY, J.—I. It is objected that the indictment does not set forth the denomination or any description of the notes claimed
1. CRIMINAL LAW: indictment: description of property. to have been stolen, except that they were national currency. The indictment charges that the number and denomination are unknown. If a more full description should be required, it would in many cases afford the thief entire immunity.

No one from whose safe five hundred dollars, of the usual denominations received in ordinary busines, should be stolen, could testify as to date, number and denomination of the bills taken. It would be a mere 'chance if he would be able to identify certainly a single bill. The law should not, and does not, require unreasonable things. The indictment, we think, is sufficient. *Munson v. The State*, 4 G. Greene, 483, and cases cited.

II. The evidence shows that defendant and one Christopher Reichman were fishing upon the day on which, it is alleged, the offense was committed. On the afternoon of that day they went to the store of the prosecuting witness, Pfiffner, and remained until nearly evening. The defendant and Reichman were employed at grubbing for one Thomas. When Reichman and defendant went out of the store, the defendant told Reichman he might go home, and said that he was going into the store again. This was toward evening, when it was a little dark. About this time Pfiffner locked his store and went to supper. When he returned he lighted a lamp, and discovered that the money left in his drawers, and the money in his safe, which he left unlocked, were missing, amounting in all to over five hundred dollars. Near the safe he found two fish lines, and under the window communicating with the store-room, he found a red cotton handkerchief, having in it clams, that had been taken from their shells for fish bait.

About 8 o'clock that night defendant came to the house of John Dun, where he kept his trunk and made his home, when not actively employed. He soon went out of the house, and was gone three-quarters of an hour. He was called from the house, and he answered back, about half way from the house to the stock yard. He was arrested that night about twelve o'clock. The next day money amounting to $435.00 was found concealed under one of the wheat stacks in Dun's stack yard, and rolled up in fish lines. Afterward, about $20.00 was found near a by-path leading from Pfiffner's store to Dun's farm. The handkerchief, the fish lines found near the safe, and some of those found with the money in the wheat

stack, were identified as the property of the defendant. Amongst other things, the court instructed the jury as follows:

"If you are satisfied that the money was stolen as charged, then you will take up the second point, was it the property of Mr. Pfiffner? On that point you must be satisfied that the money belonged to Pfiffner. Questions of identity are often the most difficult of all questions for the jury to determine; but, after all, it is to be determined as any other fact, viz: From all the facts, circumstances and evidence in the case. That the property in this case consists of bank bills does not render identification impossible, but only more difficult of solution. Applying all the facts, circumstances and evidence, you will determine this question of identification of the money stolen from Mr. Pfiffner. If you find that the offense was committed, and that the property or money belongs to Mr. Pfiffner, then you will determine the guilt or innocence of the prisoner from the charge as well as from the facts, circumstances and evidence."

The defendant asked the court to instruct as follows: "In this case it is necessary for the prosecution to prove the identity of the bank notes stolen from him, and if the prosecution has failed to prove this, the jury should find a verdict of not guilty."

The court refused to give this instruction otherwise than as embraced in his general charge. Defendant insists that this action was erroneous.

It is urged that the general circumstances of the case cannot be considered in determining whether money found in the stack was the property of Pfiffner, but that, before defendant can be convicted, Pfiffner must be able to swear "that, and that, and that particular bill I recognize as having been in my safe when I closed my store on the evening of August 29, 1873." This view is clearly unsound. Suppose that soon after Pfiffner had closed his store the defendant had been seen to enter and to come from it through the window, that he had been seen to go to a wheat stack in Dun's yard and deposit something in a particular place; that Pfiffner, upon returning,

missed five hundred dollars from his safe; that upon immediate search five hundred dollars were found in the stack at the place where defendant was seen. Would any one doubt that the money in the stack was the money taken from the store, although Pfiffner could not pick out a single bill and say, " from date, number, or from private mark, I recognize that as one of the bills I lost?" It is clear that the identity and ownership of money can properly be determined by circumstances, and it seems to us that a pertinent, well connected chain of circumstances affords more satisfactory evidence of the identity of such property as that under consideration, than the positive testimony of a witness who would swear to the date, number, denomination, or private marks upon five hundred dollars of national currency, promiscuously received in the ordinary course of business.

The instruction was right. The evidence sustained the verdict. The record discloses no error.

AFFIRMED.