[No. 10,662.—In Bank.]
December 15, 1882.

# THE PEOPLE *v.* NANCY HAMILTON.

EXAMINATION OF JUROR—CHALLENGE—ACTUAL BIAS.—Upon the examination of a juror, who has stated that he has formed a qualified opinion as to the guilt or innocence of the defendant, the juror can not, in the absence of a challenge for actual bias, be asked whether he believes the defendant to be guilty or not guilty.

ID.—ID.—ID.—Upon a challenge for actual bias such a question might properly be asked, as tending to show an existence of actual bias.

ID.—ID.—ID.—CASE DISTINGUISHED.—What is said in *People* v. *Williams*, 6 Cal. 206, with reference to the impropriety of permitting the inquiry on which side an opinion has been expressed, was not called for in the case. But treating the case as correctly deciding, that, upon the issue of "implied bias," which, as the law then stood, was established by showing that a juryman "had formed or expressed an unqualified opinion," etc., it was immaterial to know, and therefore (in view of the possible effect upon other persons summoned as jurors and awaiting examination) improper to inquire, whether the "unqualified opinion" was for or against the prisoner; such an issue can no longer be raised, since "the having formed or expressed an unqualified opinion as to the guilt or innocence of the accused" is no longer a cause of challenge for implied bias. (Penal Code, 1074.)

ID.—ID.—ID.—CASE EXPLAINED.—The language of the Court in *People* v. *Backus*, 5 Cal. 277, is not to be construed as holding that a defendant need not interpose a challenge, as for implied or actual bias, until he has proved that it ought to be *allowed*, or that he can complain of any ruling with reference to a question he may ask, without challenging the juror, but only that it is the better practice to permit preliminary inquiries, which, if answered satisfactorily to defendant, may relieve him of the necessity of challenging. But, if it be admitted to be the rule, that the examination may be exhaustive before the challenge, the examination, or any ruling during its continuance, can not be made the foundation for alleged error, unless the challenge is taken *at some stage* of the proceedings in the Court below.

ID.—ID.—PEREMPTORY CHALLENGE—CASES EXPLAINED AND LIMITED.— After a trial of an issue as to the existence of actual bias in the mind of the juror, and a finding against the challenging party, it would appear that he should be sufficiently informed to exercise his right of peremptory challenge. The law gives him the advantage of any knowledge he may thus acquire, but does not afford him an opportunity to examine a juror for the avowed object of determining whether he will challenge him peremptorily. *Watson* v. *Whitney* (23 Cal. 379) and *People* v. *Car Soy* (57 id. 102) explained, and the *dicta* on this point disapproved.

INSANITY—REASONABLE DOUBT—BURDEN OF PROOF—SATISFACTORY PROOF— DEFINITION—CASE EXPLAINED AND LIMITED.—The Court below charged the jury as follows: "Where insanity is relied upon as a defense, the burden of proof is on the defendant; and that the proof must be such in

amount that if the single issue of sanity or insanity of the defendant should be submitted to the jury in a civil case, they must find that he was insane. That the insanity must be clearly established by satisfactory proof."

*Held:* In the connection in which the words are used, to say that insanity must be "clearly established," is not to say that the evidence must more than preponderate, but only that the preponderance must be plainly apparent. Such must be the case in every instance where the affirmative of an issue is sought to be established and a peculiar presumption be overcome. There may be a greater or less degree of lucidity, but the preponderance must be distinctly perceptible. It is in this sense that the expression is often used by Courts and law writers in speaking of the degree of evidence necessary to overcome a presumption greater than that which arises, that a particular fact—as probably existing as non-existing—exists—*e. g.*, as when it is said that fraud must be clearly proved. In civil cases fraud is proved by a preponderance of the evidence, yet, inasmuch as the law, to the credit of human nature, presumes that men are oftener honest than dishonest, the preponderance must clearly appear. Thus only can the fact of fraud or insanity be "satisfactorily proved." The majority opinion in *People* v. *Wreden* (59 Cal. 392) on this point disapproved.

APPEAL from a judgment of conviction and from an order denying a new trial in the Superior Court of the County of Sacramento. DENSON, J.

*Clinton L. White,* for Appellant.

*A. L. Hart,* Attorney General, for Respondent.

McKINSTRY, J.:

In his petition for rehearing, counsel for defendant and appellant insists that two propositions, by him advanced, have been entirely misapprehended by this Court. The first of these relates to the ruling of the Court below in sustaining objections to questions asked by defendant at the impaneling of the jury; the second, to an instruction given to the jury upon the subject of insanity.

1. Wilkinson was examined on oath as to his qualifications to sit upon the jury. After stating that he had an opinion as to the guilt or innocence of defendant, he was asked by counsel for defendant: "Does your opinion go to the question of her guilt, or does it go to the question of her innocence?" The Court sustained the District Attorney's objection to the question, and defendant duly excepted. The bill of excep-

tions proceeds: "The juror was afterwards excused upon a challenge for cause."

It is perfectly manifest that defendant was deprived of no substantial right—even conceding the ruling to have been erroneous—in so far as was concerned her privilege to challenge for bias, actual or implied.

Counsel for appellant argues, however, that the question should have been allowed, " to enable the defendant to intelligently exercise the right of peremptory challenge." But if counsel be correct in this assertion, still no injury was done to defendant, who had no occasion to determine whether she should peremptorily challenge the person under examination, since such person " was excused upon a challenge for cause."

J. M. Henderson was examined as to his qualifications to serve on the jury. He stated that he had a *qualified* opinion as to the case. He was asked by counsel for defendant: " From the opinion you have formed in the case, and which you say is a qualified opinion, do you believe the defendant to be guilty, or do you believe her to be innocent ?" The District Attorney objected, on the ground that the question was incompetent, irrelevant, and improper. The Court sustained the objection, to which ruling defendant excepted.

If Henderson had been challenged for actual bias, we think —notwithstanding the fact that counsel for appellant disavows the proposition—the question might properly have been asked. The issue being in such case, "the existence of a state of mind on the part of the juror   *   *   *   in reference to either of the parties which will prevent him from acting with entire impartiality and without prejudice to the substantial rights of either party"—(Penal Code, 1073)—the fact that a juryman had a qualified opinion, or even impression, of defendant's guilt, might *tend* to show an existence of actual bias. And this is true, although it is also true that actual bias does not exist, provided the juror, notwithstanding his qualified or unqualified opinion, can and will "act impartially and fairly."

It has been supposed that *People* v. *Williams* (6 Cal. 206) lays down different doctrine. In that case the question did not arise. There the juror was asked if he had formed or expressed an unqualified opinion "as to the guilt or innocence

of the accused," and answered that he had formed an unquali-
fied opinion, or an opinion "not qualified." There seems to
have been no further examination, yet, upon this evidence
the District Court held the juror competent and qualified.
The Supreme Court decided that the Court below should,
upon the uncontradicted testimony, have sustained a challenge
for implied bias. The only argument adduced in support of
the ruling of the lower Court was that it did not appear from
the record that the unqualified opinion was adverse to de-
fendant, although it did appear that the person examined had
expressed an unqualified opinion as to the guilt or innocence
of the accused.

What is said in *People* v. *Williams* with reference to the
impropriety of permitting the inquiry on which side an
opinion has been expressed, was not called for in the case.
But treating the case as correctly deciding, that, upon the
issue of "implied bias," which, as the law then stood, was es-
tablished by showing that a juryman "had formed or expressed
an unqualified opinion," etc., it was immaterial to know, and,
therefore (in view of the possible effect upon other persons
summoned as jurors and awaiting examination), improper to
inquire, whether the "unqualified opinion" was for or against
the prisoner; such an issue can no longer be raised, since "the
having formed or expressed an unqualified opinion as to the
guilt or innocence of the accused" is no longer a cause of chal-
lenge for implied bias. (Penal Code, 1074, as amended April
9, 1880.)

The reason suggested in *People* v. *Williams* never applied
to a question put upon the trial of an issue of actual bias, and
the importance of ascertaining the exact condition of the
juror's mind requires the freest latitude in an investigation,
the end of which is to ascertain—"Is the juror impartial?"

But the juror Henderson was not challenged for actual bias,
nor challenged at all. Here again, it would seem, certain
early cases in California have been somewhat misunderstood.
In the case of *The People* v. *Backus* (5 Cal. 277), Murray, C. J.,
said: "There is another objection raised by the appellant which,
if not sufficiently erroneous to reverse the judgment, at least
calls for correction at the hands of this Court. I refer to the
course adopted by the Court below in refusing to allow the

prisoner to propound any interrogations to the jurors without first challenging them for cause. It is usual everywhere to ask the juror if he has formed or expressed an opinion as to the guilt or innocence of the accused, but in the present case the Court refused to allow these questions to be asked, and the prisoner was compelled to prejudice his case by first challenging the jurors and then having the fact of their bias determined by triers appointed by the Court. Before being thus compelled to challenge, he should have been allowed to ascertain whether there was any fact from which the presumption of bias or prejudice would arise, and, this fact having been ascertained, then the challenge would properly have followed, and the triers would have had to ascertain whether there was bias in fact."

· Read as a whole, the language quoted is not to be construed as holding that a defendant need not interpose a challenge, as for implied or actual bias, until he has proved that it ought to be *allowed*, or that he can complain of any ruling with reference to a question he may ask, without challenging the juror, but only that it is the better practice to permit preliminary inquiries, which, if answered satisfactorily to defendant, may relieve him of the necessity of challenging. But, if it be admitted to be the rule, that the examination may be exhaustive before the challenge, the examination, or any ruling during its continuance, can not be made the foundation for alleged error, unless the challenge is taken *at some stage* of the proceedings in the Court below. In *People* v. *Reynolds*, 16 Cal. 129, the Court, by Baldwin, J., said: "It is the common practice in this State to interrogate a juror upon his *voir dire* generally as to his qualifications, with a view to obtain information upon which to rest a specific challenge. The practice, though productive of some inconvenience, is one of necessity; for unless it be followed, it will often be quite impossible to ascertain the qualifications of the juror. * * * If, therefore, the challenge for implied bias be not taken before the juror is examined, the proper course to pursue is to make the challenge, stating distinctly its causes, *immediately after the preliminary examination is closed.* The District Attorney can then except to the challenge, or deny the facts it alleges. If the latter

course be adopted, the juror can be further examined, and other witnesses called, and the matter be thus submitted to the Court." Of course, under the Penal Code, the same rule applies to the matter of actual bias.

In the present case, the transcript shows that *Henderson* was not challenged before or after his examination upon his *voir dire,* either for actual or implied bias. His examination, therefore, went for naught. No issue was made to which his testimony was directed, and of course the action of the Court, refusing to allow the question whether his qualified opinion was favorable or hostile to defendant, can not be assigned as error.

After a trial of an issue as to the existence of actual bias in the mind of the juror, and a finding against the challenging party, it would appear that he should be sufficiently informed to exercise his right of peremptory challenge. The law gives him the advantage of any knowledge which he may thus acquire, but does not afford him an opportunity to examine a juror for the avowed object of determining whether he will challenge him peremptorily.

Mr. Justice Crocker, in *Watson* v. *Whitney,* 23 Cal. 379, remarked : " Each party has a right to put questions to a juror to show, not only that there exists proper grounds of a challenge for cause, but to elicit facts to enable the party to decide whether or not he will make a peremptory challenge." But this language was clearly *dictum,* since one of the questions asked was evidently directed to an ascertainment of the fact whether or not the juror had formed or expressed an *opinion,* and the having formed or expressed an unqualified opinion was (under the law then in force) cause of challenge for implied bias.

In *People* v. *Car Soy,* 57 Cal. 102, two of the Justices in Department Two cited the language of Mr. Justice Crocker, above quoted, with apparent approval. But an examination of that case will show that the questions there objected to were such as, if answered in the affirmative, would lead to facts tending to prove that the juror was *actually biased.*

It has never been declared, in any case where such declaration was necessary to the decision, that a person summoned as a juror may be questioned for the mere purpose of ascer-

taining whether the questioner shall determine to challenge him peremptorily.

The Penal Code, after enumerating a large number of facts, the mere existence of which shall conclusively establish bias on the part of an individual juror, gives to the parties to a criminal action an opportunity to enter into an enlarged inquiry as to the state of mind of the juror; whether, with or without reason, he is not strictly impartial. With reference to the existence of any one of the facts, which, by law, conclusively establishes implied bias, and with reference to the existence of a state of mind in the juror rendering him not strictly impartial, an issue must be made up before or after a preliminary examination. After giving the opportunity thus to ascertain the existence or non-existence of implied or actual bias, the Penal Code accords to a defendant on trial for an offense punishable with death twenty *peremptory* challenges. These he exercises at his own volition. The State can not say he ought not to challenge peremptorily a particular juror. No issue is raised upon the result of the trial of which his right depends. As no issue can be made or tried, to which the question, intended simply to enable a defendant to make up his mind whether he will challenge peremptorily, can apply, it would follow, if appellant is right, that the trial Court can place no limit upon the questions which defendant may choose to ask.

While, therefore, a defendant may, when the opportunity to interpose a peremptory challenge arises, have the benefit of any information acquired during the trial of a challenge for implied or actual bias, he can not embark in a general exploration for the sole purpose of satisfying himself whether it will be safe to be tried by a juror against whom no legal objections can be urged.

2. It is said that the Court below erred in charging the jury as follows: " Where insanity is relied upon as a defense, the burden of proof is on the defendant; and that the proof must be such in amount that if the single issue of sanity or insanity of the defendant should be submitted to the jury in a civil case, they must find that he was insane. That the insanity must be clearly established by satisfactory proof."

In answer to questions propounded by the House of Lords

(Roscoe's Cr. Ev. 953), Tindal, C. J., said: "To establish a
defense on the ground of insanity, it must be *clearly proved*
that at the time of committing the act the party accused was
laboring under such a defect of reason," etc. In *People* v.
*M'Donell,* 47 Cal. 136, an instruction given in the · Court
below was approved, and was thus construed: "In other
words, insanity must be clearly established by satisfactory
proof."

Appellant relies upon *People* v. *Wreden,* 8 Pac. C. L. J.
191. We do not find it necessary to dissent from the philo-
logical criticism found in the opinion of two of the Justices
in that case. The judgment of the trial Court was there
properly reversed, if for no other reason, because the instruc-
tions were clearly contradictory. In the same charge the jury
were told "if they entertained a reasonable doubt of the
sanity of the defendant he must be acquitted," and "it was
not sufficient" (to justify an acquittal) "that they should
merely entertain a reasonable doubt of his sanity."

The first question to be solved in every review of an in-
struction is, of course, what idea was conveyed by it to the
jurymen? In the case before us the jurors were told, in
effect, that the burden of proving insanity is on the defend-
ant; that he is not obliged to prove his insanity beyond a
reasonable doubt, but, on the other hand, it is not sufficient
to create a reasonable doubt that the defendant is or may be
insane; that it is enough, if the evidence be such as would
justify a jury in a civil case in finding defendant insane, were
the single issue "sane or insane" submitted to them—that is,
it is enough if the insanity be established by a preponderance
of evidence. We are convinced the phrase used in connec-
tion with the last proposition—"the insanity must be clearly
established by satisfactory proof "—could not have misled the
jury. The words were added, it would appear, in opposition
to any suggestion that defendant would be entitled to the
benefit of a reasonable doubt on the question of insanity, and
to guard the jury from the effect of such suggestion. Reading
the charge as a whole—so far as it treats of insanity—the
jury were informed that insanity was established satisfac-
torily if it was proved by a clear preponderance of the evi-
dence.

Having been told that the evidence in favor of insanity must outweigh the evidence in favor of sanity, the jury were further instructed that this must clearly appear; that they must not mistake a *quantum* of evidence which creates a doubt of defendant's sanity for that which overcomes the presumption of sanity, and the proof of such facts as may be established affirmatively for the purpose of strengthening the presumption. In the connection in which the words are used, to say that insanity must be "clearly established" is not to say that the evidence must more than preponderate, but only that the preponderance must be plainly apparent. Such must be the case in every instance where the affirmative of an issue is sought to be established and a peculiar presumption be overcome. There may be a greater or less degree of lucidity, but the preponderance must be distinctly perceptible. It is in this sense that the expression is often used by Courts and law writers in speaking of the degree of evidence necessary to overcome a presumption greater than that which arises, that a particular fact—as probably existing as non-existing—exists, *e. g.*, as when it is said that fraud must be clearly proved. In civil cases fraud is proved by a preponderance of the evidence, yet, inasmuch as the law, to the credit of human nature, presumes that men are oftener honest than dishonest, the preponderance must clearly appear. Thus only can the fact of fraud or insanity be "satisfactorily proved."

Judgment and order affirmed.

MORRISON, C. J., and ROSS, MYRICK, and McKEE, JJ., concurred.

SHARPSTEIN, J., dissented.