STATE OF IOWA v. CHARLES NEWHOUSE, Appellant.

Larceny: IDENTITY OF STOLEN MONEY: *Jury question*. In a prosecution for larceny, there was evidence that before the larceny defendant did not have the amount of money which was found on him afterwards; that when arrested he tried to secrete or destroy the papers money which he had on his person and that the kind of money lost, was the kind of money found on defendant. *Held*, that an instruction that there was no evidence identifying the money found on defendant as the money stolen, was properly refused.

MISCONDUCT IN ARGUMENT: *Departure from evidence.* Where defendant on being arrested for larceny of money, took a roll of paper money from his pocket, and thrust it into his mouth, and only disgorged it after a struggle with the officers, the statement of counsel for the state, in his opening argument, that when arrested defendant" stuck this money in his mouth and began chewing on it," was not such a departure from the evidence as to prejudice the defendant.

*Same.* In a prosecution for larceny, there was evidence that defendant, on being notified by his wife of the theft, inquired as to the whereabouts of his horse. The wife testified that, just prior to the discovery of the theft, she heard defendant whistle for the animal, and heard it whinny in response. *Held,* sufficient to support the state counsel's statement in his argument that there was a horse on the premises.

*Appeal from Monroe District Court.*—HON. F. W. EICHELBERGER, Judge.

FRIDAY, DECEMBER 20, 1901.

DEFENDANT was indicted for the larceny of $600 in money. From a verdict of guilty and judgment thereon, he appeals.—*Affirmed.*

*N. E. Kendall* for appellant.

*Chas. W. Mullan,* Attorney-General, and *Chas. Van Vleck,* Assistant Attorney-General, for the State.

WATERMAN, J.—Certain money was found on defendant at the time of his arrest. Defendant asked, and the court refused to give, the following instruction: (1) "Certain money was found on the person of the defendant Newhouse when he was arrested in Des Moines, Iowa, and at Monticello, Illinois. There is no evidence in this case, however, identifying or tending to identify this money as the same money that it is alleged was stolen from the residence of Celestine Walden on January 21, 1900. You are instructed, therefore, that the fact that such money was found in the possession of the defendant

on the occasion mentioned should not be considered by you as a circumstance in any way tending to establish his guilt, or to connect him with the commission of the larceny charged in the indictment." It will be noticed this instruction says there is no evidence tending to identify the money found on defendant as a part of that which was stolen. While it is true no witness testified to the fact that the particular bills found on defendant were among those which were stolen, it is not true there was no evidence of identity. There was testimony to the effect that, before the larceny, defendant did not have the amount of money which was found upon him afterwards; and that, when arrested, he tried to secrete or destroy the paper money which he had upon his person. There was also some evidence as to the kind of money lost and the kind found on defendant. In *State v. Hoppe,* 39 Iowa, 468, this court, speaking upon the subject of identifying money, said: "It is clear that the identity and ownership of money can properly be determined by circumstances, and it seems to us that a pertinent, well connected chain of circumstances affords more satisfactory evidence of the identity of such property as that under consideration than the positive testimony of a witness who would swear to the date, number, denomination, or private mark upon five hundred dollars of national currency promiscuously received in the ordinary course of business." See, also, *State v. Buckley,* 60 Iowa, 471; *State v. Griffin,* 71 Iowa, 373. The instruction was rightly refused.

II.   Certain remarks of counsel and a statement made by the court are excepted to. These will be best understood if a brief recital of the facts in evidence, is given. Defendant and his wife were living with the latter's mother, Mrs. Walden, to whom the money taken belonged. Mrs. Walden, to defendant's knowledge, had received the sum of $600 in currency. She secreted it in the straw mattress on her bed. On the next evening Mrs. Walden

and her daughter went to the cow lot, some 75 feet from the house, to milk, leaving defendant, as the prosecuting witness says, at the house. A few minutes later they heard a crash, and, on going to the house, found the bedroom window broken in, the bed dismantled of its clothing and the money gone. Defendant came in from somewhere outside, and, on being told of what had happened, and requested to procure officers, he notified a near neighbor, and then went to the house of another neighbor, some half a mile from Mrs. Walden's, and there borrowed a horse to ride to town after the officers. He was later arrested in the city of Des Moines, at a railway depot, on alighting from a train, by two officers in plain clothes, who displayed their stars, told him of their authority, and, in response to his inquiry, informed him of the cause of his arrest. Upon receiving this information, defendant took a roll of paper money from his pocket and thrust it into his mouth, and only disgorged it after a struggle with the officers. The remarks complained of can now be understood. D. W. Bates, one of counsel for the state, said, in the opening argument to the jury, that when defendant was arrested, "he stuck the money in his mouth and began chewing on it." The claim is that there is no evidence of his chewing the money; that, so far as appears, he may have placed it in his mouth only to preserve it from these two men, whom he may well have believed intended to steal it from him. It is true, some bystander raised a cry of robbery. But there is nothing in the testimony to show that defendant misunderstood the situation. He had been told by the officers of their character, and shown the badges of their authority. When, in their view, he thrust the money into his mouth, it could reasonably have been for the purpose only of mutilating or destroying it with his teeth. If that was his purpose, the statement of counsel is not such a departure from literal accuracy as could have prejudiced defendant. The trial court overruled the motion for a new trial, and evidently because it did not deem the

statement of counsel prejudicial. This court has always recognized some discretion in the trial court in passing upon matters of this kind, and interferes only in case of its abuse. *Geiger v. Payne,* 102 Iowa, 581; *State v. Millmeier,* 102 Iowa, 693; *State v. Toombs,* 79 Iowa, 741. The same attorney further said, in speaking of defendant's conduct at the time the larceny was discovered: "Why did he walk three-quarters of a mile to Jim Fisher's to get a horse to ride to town when he had a horse of his own right there in that lot at the house that he could have rode ?" When this statement was objected to by defendant's counsel, another of the attorneys for the state, J. T. Clarkson, said, in substance, that defendant's wife had testified the horse was there; and the court said, in substance, that he remembered the testimony, and there was sufficient evidence to warrant the statement. The contention now is that there was no evidence that defendant had a horse, or that any horse was there. The evidence shows there was a horse on the premises, and from the fact that defendant inquired of his wife as to its whereabouts, presumably he could have taken it. That the horse was not far away from the house is sufficiently shown by the testimony of defendant's wife, who says that when she was milking she heard defendant whistling for the animal, and heard it whinny in response to his call. We think the statement had substantial support in the evidence. We see no ground for interfering with the judgment.—AFFIRMED.