STATE OF IOWA, Appellee, v. JOSEPH BRANDENBERGER, Appellant.

**Criminal law:** EVIDENCE: CROSS EXAMINATION: DISCRETION. The defendant in a criminal action when testifying in his own behalf stands upon the same footing as any other witness, and may be cross examined touching his memory, history, motives or upon matters affecting his credibility, the extent to which such inquiries may be carried resting largely in the discretion of the trial court. In the instant case no abuse of discretion is shown.

**Same:** NEW TRIAL: MISCONDUCT OF COUNSEL: DISCRETION. The refusal of a new trial on the ground of misconduct in argument involves an exercise of the court's discretion, and a reversal will not be ordered unless. an abuse of such discretion is shown.

**Same:** INSTRUCTIONS: GOOD CHARACTER. Mere failure to instruct is not reversible error unless the result is to deprive defendant

of a fair trial; and where the instructions given are correct as far as they go defendant should request further instructions if he desires them, otherwise he will not be heard to complain. In this case failure to instruct on the subject of the good character of defendant, no request therefor having been made, is held not reversible error.

**Murder:** EVIDENCE. The evidence in this action is held to sustain conviction for murder in the first degree.

**Same:** PASSION: RESPONSIBILITY: INSTRUCTION. One having a rational intellect or sound mind is responsible for his criminal acts, although done in the heat of passion or the spirit of revenge, the result of real or fancied injury.

**Same:** UNCONSCIOUS ACT: QUANTUM OF PROOF: INSTRUCTIONS. Where the court treated defendant's claimed unconsciousness, the result of passion, as the equivalent of insanity, it was error to instruct that the evidence in support of his claim must be conclusive; as this was equivalent to saying that he must establish the defense beyond a reasonable doubt, when the law only requires that such a defense be established by a preponderance of the evidence.

*Appeal from Dubuque District Court.*—HON. ROBERT BONSON, Judge.

TUESDAY, MAY 2, 1911.

DEFENDANT was indicted for the crime of murder in the first degree. Upon trial to a jury he was convicted of the offense charged, and his punishment was imprisonment for life in the state penitentiary. He appeals. *Reversed.*

*John P. Frantzen,* for appellant.

*George Cosson,* Attorney-General, and *John Fletcher,* Assistant Attorney-General, for the State.

DEEMER, J.—Defendant and the deceased, Henry Schranz, were bricklayer's helpers, residing together in the city of Dubuque for some weeks prior to the 27th day

of August, 1909, in a small cottage in said city. These parties had known each other for many years, had often worked together, and had had several quarrels prior to the one which resulted in the death of Schranz. Defendant was engaged about his work on August 27, 1909, until five or six o'clock in the evening, when he went to the cottage where he and Schranz resided. Schranz had preceded him, and shortly after defendant's arrival there was considerable loud talking and quarreling between the men a short time before six o'clock in the evening. They were seen to come out of the house shortly thereafter and to go back again, when the quarreling was renewed. It is claimed by defendant that the deceased, Schranz, made an assault upon him, and choked and beat him to such an extent as to cause him to lose consciousness; that when he regained control of himself, the deceased was out in the yard; and that defendant, still maddened from the beating he had received, and without realizing the consequences of his act, took a loaded shotgun from the house, went out into the yard, and fired two shots in rapid succession at Schranz, each of which took effect, causing the death of said Schranz shortly thereafter. Deceased was a man about five feet ten inches in height, weighed from two hundred and forty to two hundred and fifty pounds, had quite a reputation as a wrestler, and of being a quarrelsome man. There was testimony for the state tending to show, and from which the jury may have found, that when defendant and Schranz came out of the house, after they first met, defendant called Schranz vile names, and took out his knife, intending to use it as he said if Schranz attacked him. Defendant claimed that after the first wordy conflict he went out onto the street to look for a policeman; but, in fact, he went into a saloon, where he took a glass of beer. After defendant returned to the house, deceased came out and began talking to some neighbor boys, and in ten or fifteen minutes after-

ward defendant appeared at the door of the house with a double-barreled shotgun, and, according to the state's claim, immediately raised it, took deliberate aim at Schranz, who was about twenty-five feet from him and fired the two shots which caused the death of Schranz. There is testimony showing that upon the first discharge of the gun Schranz fell to the ground, and that, after he fell, defendant fired the second shot. Schranz died within a few minutes after the last shot was fired, and a post mortem examination revealed the fact that his heart, lungs, kidneys, spleen, and stomach were penetrated by a great number of shot. No one was in the house save the defendant and the deceased, but the defendant says that the quarrel arose over who was entitled to the possession of a salt shaker; that, because thereof, he was attacked by Schranz after he had entered the house a second time, and was beaten into insensibility; and that he had no recollection whatever of shooting Schranz.

For a reversal of the judgment appellant's counsel contend, first, that counsel for the state was guilty of misconduct in his examination of the defendant while on the witness stand and in his argument to the jury; second, that the court erred in failing to give any instruction to the jury with reference to the effect of testimony adduced by the defendant showing his good character; third, that the court erred in giving certain of its instructions to the jury; and, fourth, that the verdict is contrary to the evidence and is not supported thereby.

I. Defendant was a witness in his own behalf, and the first point made is that counsel for the state in his cross-examination was guilty of misconduct in inquiring into the defendant's past history, previous residences, prior conduct, and mode of living. That the exact question presented may be understood, we here quote from the record as follows:

1. CRIMINAL LAW: evidence: cross examination: discretion.

Q. Were you married in Alsace-Lorraine? (Defendant objects as not cross-examination, and wholly immaterial. Objection overruled, and defendant duly excepts.) A. Yes, sir. Q. What year were you married in? (Defendant objects as incompetent, irrelevant, and immaterial, and not cross-examination. Objection overruled, and defendant duly excepts.) A. 1884. Q. With whom did you live from 1884 to 1896? (Defendant objects as not cross-examination, incompetent, irrelevant, and immaterial. Objection overruled, and defendant duly excepts.) A. Until 1892 I was home. Q. I said with whom? A. My wife. . . . Q. And from 1892 until 1896 with whom did you live? (Defendant objects as not cross-examination, incompetent, irrelevant, and immaterial. Objection overruled, and defendant duly excepts.) A. I was boarding then. . . . Q. With whom did you live in the city of Dubuque from 1906 until 1908? (Same objection. Objection overruled, and defendant duly excepts.) A. Well, from 1906 until 1908 I was working for the government. Q. No; who did you live with? (Same objection. Objection overruled, and defendant excepts.) A. I was working on the river two summers, 1897 and 1898. Q. You were working on the river in 1908—I am asking you from 1906 until 1908? A. I was boarding. Q. With whom? A. By John Klein. Q. With whom did you live in the year 1907? (Defendant objects as not cross-examination, incompetent, irrelevant, and immaterial. Objection overruled, and defendant duly excepts.) A. My wife. Q. Your wife that you married in Alsace-Lorraine? (Defendant objects as prejudicial, incompetent, irrelevant, and immaterial, not proper cross-examination.) By the Court: I think I will sustain the objection. Q. What was your wife's name before you were married to her that you lived with in 1907? (Defendant objects as incompetent, irrelevant, and immaterial, and not cross-examination. Objection overruled, and defendant duly excepts.) A. Mrs. Shertung. Q. Mrs. Shertung? During the time— during the year 1907—I will ask if your wife, to whom you were married in Alsace-Lorraine in 1884, was still alive? (Defendant objects as incompetent, irrelevant, and immaterial, not cross-examination, and not tending to prove or disprove any issue in the case, and prejudicial.) Q.

And from whom you had never had any divorce? (Defendant objects as prejudicial, incompetent, irrelevant, and immaterial, not cross-examination; this witness not having testified to any such facts.)

Counsel for State: I might suggest to counsel that this is for the purpose of testing the credibility of this witness, subject to the same rules as any other witness.

Counsel for Defendant: I don't see how that would in any way test the credibility of the witness. The question that has been asked, how that would in any way tend to throw any light upon the credibility of this witness. It is apparently an attempt to get into this record some matter which is entirely foreign and outside of the record, and good for no purpose or object of any kind in this case.

By the Court: I think I will sustain the objection. There is no question but what in the civil practice that might be allowed and competent.

Counsel for State: Of course, the court has the say on the proposition, but I take issue with the court on that proposition. Any witness taking the stand we have a right to show anything that would tend to discredit the witness. (State duly excepts.) . . .

Q. You may state if you consulted any lawyer upon the proposition of your continuing to live with the wife that you had married in this country in the year 1908? (Defendant objects as prejudicial, not cross-examination, and asked for the purpose of prejudicing the jury, and counsel knows that the question itself is incompetent and improper. Objection sustained, and state duly excepts.)

Defendant is here shown "State's Exhibit 1" (being the double-barreled shotgun introduced in evidence by the state upon its main case), and the county attorney asks of defendant: Q. Is this your gun?

Counsel for Defendant: Objected to as incompetent, irrelevant, and immaterial, not cross-examination; nothing asked on direct examination about that. If the state wants to make him their witness, I have no objection, but it is not cross-examination.

By the Court: This man was interrogated, was he not, as to what was in that house? He may answer. (Defendant duly excepts.)

A. Yes, sir. Q. When was the last time that you

had that gun, that you know of, prior to the 27th of August, 1909? (Defendant objects as incompetent, irrelevant, and immaterial, and not cross-examination.)

Counsel for defendant: We make the further objection for the reason that this witness has not been examined in relation to the statement (State's Exhibit 2), and it is therefore not cross-examination.

By the Court: I assume you will interrogate him in regard to this statement, 'State's Exhibit 2?'

Counsel for the State: I certainly will.

By the Court: He may answer. (Defendant duly excepts.)

A. About a couple of weeks. Q. What was the occasion of having the gun? Where were you? (Same objection. Objection overruled, and defendant duly excepts.) A. I cleaned it. Q. How long before the 27th day of August was it that you had this gun over on the slough? (Defendant objects as not cross-examination.)

Counsel for Defendant: I would like to suggest to the court in this matter, as to the introduction of this statement (State's Exhibit 2), that the state can not introduce the statement as part of their case, and then turn around and cross-examine him about it; that is one of the further grounds on which we object to this line of examination. (Objection overruled, and defendant duly excepts.)

A. Well, I don't remember that I had it on the slough. Q. You don't remember of having this gun on the slough? A. No, sir. . . . Q. Do you remember whether you put shells in it at that time or not—when you cleaned it? (Defendant objects as not cross-examination, incompetent, irrelevant, and immaterial. Objection overruled, and defendant duly excepts.) A. I didn't put no shells in it. Q. Did you have any shells in your room; (Same objection. Objection overruled, and defendant duly excepts.) A. Yes, sir. Q. You may look at State's Exhibits 3, 4, 5, and 6, and state whether the shells you had in your room were similar to those. A. No, sir. Q. I will ask you if those shells, Mr. Brandenberger, will fit your gun? A. I can't tell you.

Counsel for Defendant: Objected to as calling for the opinion or conclusion of the witness, incompetent, ir-

relevant, and immaterial, and move that the answer be stricken out for the same reasons.

By the Court: The answer may stand. (Defendant duly excepts.)

Now, while the statute (Code, section 5485), provides that when the defendant testifies on his own behalf, he shall be subject to cross-examination as an ordinary witness, but that the state shall be strictly confined therein to the matters testified to in the examination in chief, yet it is the rule of this court, as everywhere, that such witness stands upon the same footing as any other with relation to his memory, history, motives, or matters affecting his credibility. See *State v. Kuhn,* 117 Iowa, 216; *State v. Red,* 53 Iowa, 70; *State v. Watson,* 102 Iowa, 654; *State v. Chingren,* 105 Iowa, 172; *State v. O'Brien,* 81 Iowa, 93; *State v. Wasson,* 126 Iowa, 321. Again, it is quite generally held that the extent to which such inquiries may be carried must necessarily rest in the sound discretion of the trial court. See *State v. Chingren, supra.* In *O'Brien's* case, *supra,* it was held that a defendant as a witness may be cross-examined as to crimes theretofore committed by him in order to impeach him, citing *State v. Kirkpatrick,* 63 Iowa, 554; *State v. Teeter,* 69 Iowa, 717. In *Chingren's* case, *supra,* the defendant was cross-examined with reference to his prior occupations, and this indicated that he had been running a gambling machine. Such inquiry was held proper as showing his occupation, although there, as here, defendant was directly asked as to whether or not he had been running a gambling institution. Objection to the question was sustained. In *Watson's* case, *supra,* the defendant was cross-examined as to his various places of residence, his going under assumed names, and as to his whereabouts at particular times, and this was held within the discretion vested in the trial court. In *Wasson's* case, *supra,* defendant on his cross-examination was asked as to his former residence and occupation,

and these questions elicited the fact that he had been an inmate of the reform school at Eldora. This was held proper, although it tended to disgrace and discredit him— citing *State v. Pugsley,* 75 Iowa, 742. In *Kuhn's* case, *supra,* the state was permitted to cross-examine the defendant as to her relations with one Smith. This was held proper for the purpose of showing the character of the witness and also to develop a motive for a crime with which she was charged. It will be observed that the rulings complained of are sustained by the authorities cited.

At any rate, the trial court did not abuse the discretion vested in it, and no prejudice will be inferred from the record as it now appears. *State v. Seery,* 129 Iowa, 259; *State v. Porter,* 34 Iowa, 131.

II. The other claim of misconduct on the part of the county attorney refers to his statements made in argument of the case to the jury. We shall not set out

*2.* SAME: new trial: misconduct of counsel: discretion.

these statements, as they are long and would unduly extend this opinion. It is sufficient to say that the trial court did not err in refusing to grant a new trial on account thereof. These statements, while perhaps a little flamboyant, were not such as to justify our ordering a new trial of the case. See *State v. McIntire,* 89 Iowa, 139; *State v. Newhouse,* 115 Iowa, 173; *State v. Norman,* 135 Iowa, 483.

III. Although defendant introduced testimony tending to show his previous good character, the court gave no instruction with reference to this evidence. Defendant

*3.* SAME: instructions: good character.

asked for no instruction upon the subject, but he insists that the court's failure to give one constituted reversible error.

Now, while it is the duty of the court in a criminal case to fairly present the issues in its charge to the jury in order that they may have a clear and intelligent notion as to what they are to decide, yet it is not necessary that the court on its own motion instruct upon every matter

arising in the case. While mere failure to instruct may constitute reversible error, if it should be apparent that this failure resulted in depriving defendant of a fair trial, yet, where the instructions given are correct as far as they go, the defendant should, if he desires further instructions, ask them, or he will not be heard to complain. *State v. Helvin,* 65 Iowa, 289; *State v. Illsley,* 81 Iowa, 49; *Slate v. Watson,* 81 Iowa, 380.

Ordinarily this court will not reverse for failure to give instructions not asked, unless it be satisfied that such failure has deprived defendant of a fair trial. *State v. Hathaway,* 100 Iowa, 225. Following these general rules, it has been held not erroneous for the court to fail to instruct as to an alibi where no such instruction was asked. *State v. Lightfoot,* 107 Iowa, 344. Again, failure to instruct as to self-defense where no such instruction was asked was held not erroneous. *State v. Woodard,* 84 Iowa, 172. And in *State v. Seevers,* 108 Iowa, 738, it was held that as to any matter not referred to in the pleadings or the issues, but introduced into the case by competent and material testimony, failure to instruct with reference to this testimony in the absence of a request is not erroneous. See, as further sustaining these views, *State v. House,* 108 Iowa, 68; *State v. Miller,* 65 Iowa, 65; *State v. Stevens,* 67 Iowa, 557; *State v. Nadal,* 69 Iowa, 483; *State v. Gaston,* 96 Iowa, 505. While we apparently have no case covering the exact proposition, the rule in other states seems to be that in the absence of request, failure to instruct as to evidence of good character in a criminal case does not constitute reversible error. *Heard v. State,* 9 Tex. App. 1; *Pharr v. State,* 9 Tex. App. 129. The only case apparently to the contrary is *State v. Anslinger,* 171 Mo. 600 (71 S. W. 1041.) But that decision is bottomed upon a statute which requires the court whether requested or not to instruct the jury whenever necessary upon the subjects of good character and reasonable doubt.

We do not feel justified in reversing this case because of the failure of the court to instruct upon the subject of good character.

IV.   The testimony is amply sufficient to justify the verdict returned.   Defendant's claim was that he had no recollection of shooting the deceased, that he in effect had

4. MURDER:    been beaten into a condition of insensibility,
evidence.     and was unconscious of the act if he did

perform it.   This is something different from an assertion that his conduct was in the heat of blood and upon sufficient provocation to reduce his offense from murder to manslaughter.

V.   Instructions challenged by counsel read as follows:

(31) But if you believe from all the evidence and circumstances in the case that defendant was in the possession of a rational intellect or sound mind, and from real

5. SAME:          or fancied injury he allowed his passion to
  passion:        escape control, then, though passion or re-
  responsibility: venge may for a time have driven reason
  instruction.
                  from its seat and usurped it, and urged the defendant with a force at the moment irresistible to do the deed, if he did do it, he can not then escape legal responsibility for such acts.

(33) You are instructed that the claimed unconsciousness, such as testified to by the defendant, should be carefully considered and weighed by you.   It is a claimed condition of the mind that can be easily asserted or manufactured, and one that is difficult to disprove, and the evidence establishing same must be conclusive to your minds that it is true.   In determining this, if you find that the evidence on the part of the defendant does not outweigh the evidence on the part of the state in regard thereto, or, in other words, if you find the evidence adduced on the part of the defendant and that on the part of the state equally balanced, on that subject, then the necessary preponderance, or greater weight of the evidence, in favor of the defendant would be wanting, and the defendant has failed to establish this condition of uncon-

sciousness, and the defendant would not be entitled to a verdict of acquittal on the claim of unconsciousness.

The thirty-first instruction is clearly correct, and needs no argument in its support. If one through passion or revenge does an act, he is certainly not unconscious, but is clearly amenable to the law.

The thirty-third instruction must be considered with reference to some of the others relating to the same subject matter. In its twenty-sixth instruction the court charged

**6. SAME:** unconscious act: quantum of proof: instructions.

as follows: "(26) The defendant in this case has testified on his own behalf, and in such testimony has stated that a quarrel took place between him and the deceased,. Henry Schranz, and that, as a result of the punishment inflicted upon him by the said Schranz, the defendant lost consciousness and was in fact unconscious at the time of the shooting. If you find defendant did so shoot, and because of such unconsciousness, he is not legally responsible." And in the twenty-ninth instruction the court said: "(29) If, by a preponderance of the credible evidence, you find that the defendant did in fact lose consciousness because of the acts of the decedent, Schranz, committed upon the person of the defendant, and you further so find that such unconscious condition existed at the time of the shooting and infliction of the mortal wounds upon the body of said Schranz, as alleged, which resulted in his death, and you find defendant did the shooting, then, in such case, you are instructed that the defendant would not be criminally responsible for the acts, if any, committed by him, and you should therefore acquit him." This was followed by the thirtieth, reading in this wise: "(30) By the term 'unconscious,' as expressed in these instructions, is meant such mental derangement as dethrones the reason and judgment in respect to those acts alleged to have been committed, which destroys the power to ration-

ally comprehend the nature and consequences of those acts, and which overpowers the will." From these it is evident that the court was endeavoring to treat defendant's claim of unconsciousness as the equivalent of insanity or mental derangement as distinguished from an uncontrollable impulse or irresistible passion, although the distinction was not very clearly pointed out. The instructions should have more clearly differentiated passion from insanity. In other words, the jury's attention should have been directed to the question as to whether or not defendant's act was the result of an unsound mind or of an outburst of violent, reckless, and uncontrollable passion in a mind not diseased. If the former, the jury should have been directed to acquit. If the latter, unless the passion was found to be an insane one, they should have been told to convict.

Having in mind, then, that the court was treating defendant's claim of unconsciousness as the equivalent of insanity, it was in error in charging in the thirty-third instruction that the evidence to establish the unconsciousness must be conclusive. Nothing more was required of the defendant than that he show this claimed unconsciousness by a preponderance of the testimony. This is the rule applicable where insanity is claimed as a defense. See *State v. Felter,* 32 Iowa, 49; *State v. Bruce,* 48 Iowa, 530; *State v. Jones,* 64 Iowa, 349; *State v. Geddis,* 42 Iowa, 264; *State v. Thiele,* 119 Iowa, 659. And such a defense, like that of an alibi, must be proved by the defendant by a preponderance of the evidence (*State v. Hemrick,* 62 Iowa, 414); and, unless it be established by such preponderance, it is not sufficient to raise a reasonable doubt. See cases hitherto cited. The only case which in any manner supports the charge as given is *State v. Novak,* 109 Iowa, 717. The instruction there considered, however, is not so broad as the one now before us in that, as the court said: "In the other sentence of the

instruction the words 'clearly establishes such fact' are construed by appellant to mean by the connection in which they are used that the insanity must be established beyond a reasonable doubt. In *People v. Hamilton, supra* (62 Cal. 377), in considering the weight of evidence to establish insanity, and in passing upon an instruction in which the words 'clearly established' were used, it is said, in the connection in which they are used, to say that insanity must be clearly established is not to say that the evidence must more than preponderate, but only that the preponderance must be plainly apparent.' In *State v. Felter,* 32 Iowa, 49, it is said that the fact of sanity can not be avoided; it being in the nature of an affirmative defense, 'except by a preponderance of proof, or (which is the same) satisfactory evidence of his sanity.' That preponderance which amounts to satisfactory evidence of a fact must be such as clearly establishes the fact. We discover no error in the instruction." In the instruction complained of the jury is told that the evidence to establish the claimed unconsciousness must be conclusive to the jurors' minds that it is true. This manifestly cast a heavy burden upon the defendant, and was the equivalent of saying that he must establish his claim by evidence beyond a reasonable doubt.

The word "conclusive" means "decisive, irrefutable." In *Hoadley v. Hammond,* 63 Iowa, 599, we said: "It is certainly true that these instructions must be regarded as announcing the law of this case, and in determining it they will be so treated. But we can not assent to their soundness, and give them recognition as expressing correct rules. We regard them only as applicable to this case, for the reason that it is not in a condition to authorize us to review them. By these instructions the court below did not attempt to weigh the evidence for the jury, but simply directed them that, in order to reach certain conclusions, the evidence must be 'clear, satisfactory, and conclusive' to

their minds.   The jury, under the instructions, were left to determine whether the evidence possessed the qualities described by the instruction.   The word 'conclusive' is not used in its legal sense as possessing weight and force. that can not be contradicted, but rather in its common acceptation, in which it means 'decisive,' 'putting an end to debate or question,' 'leading to a conclusion or decision.'"  In *West v. West,* 90 Iowa, 41, we said:   "The word 'conclusive,' as used in some of the decisions of this court, relating to the character of evidence necessary in cases where it is sought to reform an instrument for fraud or mistake, is certainly not used in the sense contended for by counsel.   As used in the cases relied upon by counsel, it means that measure or degree of proof which produces in the unprejudiced mind the belief and conviction of the truth of the fact asserted, having in view all the facts and circumstances surrounding the transaction.   A fact thus established may be said to have been proven by testimony which is clear and satisfactory within the definition above quoted from Greenleaf."   From these quotations it is manifest that evidence establishing a fact conclusive to the minds of a jury is something more than a preponderance of the testimony.

As defendant was entitled to an acquittal, if he showed his unconsciousness (insanity) by a fair preponderance of the testimony, the instruction was erroneous, and for this reason the judgment must be, and it is, *reversed.*