## STATE OF CONNECTICUT *v.* LARRY MCCOWN
## (AC 21578)

Schaller, Dranginis and Daly, Js.

Argued November 26, 2001—officially released April 2, 2002

*Neal Cone*, senior assistant public defender, for the appellant (defendant).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Elpedio N. Vitale*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, Larry McCown, appeals from the judgment of conviction, rendered after a jury trial, of murder as an accessory in violation of General Statutes §§ 53a-8[1] and 53a-54a,[2] conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a)[3] and 53a-54a, attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2)[4] and 53a-54a, and possession

---

[1] General Statutes § 53a-8 (a) provides in relevant part: "A person, acting with the mental state required for commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[2] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[4] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does . . . anything which, under the circumstances as he believes them to be, is an act . . . constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

of a weapon in a motor vehicle in violation of General
Statutes (Rev. to 1993) § 29-38.[5] On appeal, the defen-
dant claims that the trial court improperly precluded
(1) a defense witness from testifying during a hearing
on the defendant's motion to suppress evidence, (2)
defense counsel from arguing to the jury about the
likely effects of the defendant's age on his ability to
realize the intent of others and (3) defense counsel from
cross-examining a state's witness about the circum-
stances of her testimony in other cases and on what
had transpired during a court recess. We affirm the
judgment of the trial court.

The jury reasonably could have found the following
facts. On the afternoon of November 20, 1994, the defen-
dant, along with Isaac Council and Council's girlfriend,
were driving on County Street in New Haven in a silver
station wagon. Upon seeing a gathering of people in
front of 69 County Street, Council, who was driving
the vehicle, slowed and stated, "There go those guys."
Council then drove to the residence of Thomas Rogers'
girlfriend on Ashmun Street. Upon arriving at the resi-
dence, the defendant, Council and Council's girlfriend
exited the car and entered the apartment. The defen-
dant, Council and Rogers went into the living room and
talked for a period of five to ten minutes before leaving
in the station wagon.[6]

---

[5] General Statutes (Rev. to 1993) § 29-38 (a) provides in relevant part: "A
person who knowingly has, in any vehicle owned, operated or occupied by
him, any weapon for which a proper permit has not been issued . . . shall
be fined not more than one thousand dollars or imprisoned not more than
five years or both, and the presence of any such weapon in any vehicle
shall be prima facie evidence of a violation of this section by the owner,
operator and each occupant thereof. . . ."

[6] The defendant disputed that portion of the state's evidence. In a state-
ment he gave to a New Haven police detective on December 1, 1994, the
defendant claimed that he never exited the vehicle. Rather, upon arriving
at Rogers' girlfriend's residence, Rogers and Council spoke outside of the
car where the defendant could overhear Council telling Rogers to "calm
down" and Rogers saying, "fuck that."

Council once again drove along County Street, with Rogers sitting in the front passenger seat and the defendant sitting in the rear passenger seat. All three individuals were wearing masks. The station wagon approached 69 County Street, and a series of shots were fired from the passenger side of the vehicle. After the initial round of firing, the defendant exited the vehicle, looked around the area and then returned to the vehicle. Council then moved the car forward several feet, and a second series of shots were fired from the passenger side of the vehicle. As a result of the shootings, one individual was killed and another was shot in the arm. The state forensic ballistic laboratory report revealed that two .45 caliber guns had been used in the shooting.

Fifteen to twenty minutes after initially leaving the apartment of Rogers' girlfriend, the defendant, Council and Rogers returned, with Council and Rogers both in possession of a gun. They went into the living room, where they spoke loudly and laughed about "see[ing] people running" and "someone [getting] hit." Council then instructed his girlfriend to go with Rogers' girlfriend to get the vehicle cleaned at a car wash. While in the process of vacuuming the car, Rogers' girlfriend discovered a shell casing on the passenger side of the car. After Rogers' girlfriend showed the casing to Council's girlfriend, the two disposed of it.[7]

The defendant went to the New Haven police department on December 1, 1994, to talk to detectives about the shootings that occurred on November 20, 1994. The defendant admitted to being present in the car during the shootings, but claimed that he did not fire a weapon and had not known what Council and Rogers intended to do when they returned to County Street. The defendant subsequently was arrested on March 8, 1997. After a jury trial, the defendant was convicted on all four

---

[7] A subsequent search by the police failed to recover the shell casing.

counts and sentenced to a total of sixty-five years imprisonment. This appeal followed.[8]

I

The defendant first claims that the court improperly prevented a defense witness from testifying during the suppression hearing after she violated the court's sequestration order. We disagree.

The following additional facts are necessary for our resolution of the defendant's claim. Prior to trial, the court issued a sequestration order, preventing any witnesses who would testify from being present during the testimony of the other witnesses. The defendant filed a motion to suppress the statement he gave to the New Haven police on December 1, 1994, claiming that he had not voluntarily waived his right to remain silent. During the suppression hearing, the state called Detective Ralph Dinello, who had taken the defendant's statement. While Dinello testified, the defendant's mother, Helen McCown, was present in the courtroom. When the defendant called his mother to the witness stand during the suppression hearing, the state objected, stating that she should be prevented from testifying because she violated the court's sequestration order.

Initially, the defendant's attorney claimed that he thought Helen McCown could be present during the testimony.[9] After a brief recess, the defendant's attorney then argued that he did not know that McCown was present during Dinello's testimony and sought permission from the court to allow her to testify for the limited

---

[8] Council and Rogers were convicted in separate trials. Their convictions were upheld on appeal. See State v. Rogers, 50 Conn. App. 467, 718 A.2d 985, cert. denied, 247 Conn. 942, 723 A.2d 319 (1998); State v. Council, 48 Conn. App. 919, 714 A.2d 733, cert. denied, 245 Conn. 920, 717 A.2d 236 (1998).

[9] In arguing to the court, the defendant's attorney stated: "I addressed— I'm sorry, I addressed this issue to the sheriff. I originally thought that she could be present and then—" before he was interrupted by the court.

purpose of establishing the defendant's age, education and reading ability. The court ruled that because McCown had violated the sequestration order, she would not be permitted to testify during the suppression hearing. It is the defendant's contention that the court's decision precluding McCown from testifying was excessive and affected his right to present a defense.

"The right to have witnesses sequestered is an important right that facilitates the truth-seeking and fact-finding functions of a trial. . . . Sequestration serves a broad purpose. It is a procedural device that serves to prevent witnesses from tailoring their testimony to that of earlier witnesses; it aids in detecting testimony that is less than candid and assures that witnesses testify on the basis of their own knowledge. . . . In essence, it helps to ensure that the trial is fair." (Citations omitted; internal quotation marks omitted.) *State* v. *Nguyen*, 253 Conn. 639, 649–50, 756 A.2d 833 (2000); see also 2 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 122d, pp. 1202–1203.

We will not reverse the court's remedy for a violation of a sequestration order absent a finding that the court abused its discretion. See *State* v. *Mincewicz*, 64 Conn. App. 687, 696, 781 A.2d 455, cert. denied, 258 Conn. 924, 783 A.2d 1028 (2001). "We acknowledge, however, that, under particular circumstances, the *unjustified* exclusion of a witness' testimony can amount to a deprivation of the defendant's right to present a defense. . . . If an impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. . . . The standard for determining whether a nonconstitutional error is harmless is that [t]he defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Emphasis added; internal quotation marks omitted.) Id. "On appeal, every reasonable presumption in favor of the trial court's discretionary

ruling will be made." (Internal quotation marks omitted.) *State* v. *Nguyen,* supra, 253 Conn. 654.

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts . . . . Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law. . . . It is a right which derives not only from the general fairness requirements of the due process clause of the fourteenth amendment but also, and more directly, from the compulsory process clause of the sixth amendment." (Citations omitted; internal quotation marks omitted.) *State* v. *Nguyen,* 52 Conn. App. 85, 102, 726 A.2d 119 (1999), aff'd, 253 Conn. 639, 756 A.2d 833 (2000).

It should be noted that the United States Supreme Court has stated that the exclusion of witness testimony when there is no fault by the defendant or his attorney is not the preferred remedy for a violation of a sequestration order. See *Holder* v. *United States,* 150 U.S. 91, 92, 14 S. Ct. 10, 37 L. Ed. 1010 (1893). It did state, however, that "the right to exclude *under particular circumstances* may be supported as within the sound discretion of the trial court." (Emphasis added.) Id. That court, however, has not specified what would be the "particular circumstances" that would warrant the exclusion of a witness who inadvertently violates a sequestration order. Several federal circuits have cautioned against excluding a witness from testifying when a sequestration order is violated. "The exclusion of a witness is a strongly disfavored sanction because of the severe consequences it holds for the defendant." *United States* v. *Hobbs,* 31 F.3d 918, 922 (9th Cir. 1994). "Because exclusion of a defense witness impinges upon

the right to present a defense, we are quite hesitant to endorse the use of such an extreme remedy." (Internal quotation marks omitted.) *United States* v. *Rhynes*, 218 F.3d 310, 321 (4th Cir. 2000).

Although we appreciate the ramifications to which the exclusion of witness testimony can lead, our courts have recognized that the remedy for violating a sequestration order is "guided by a primary concern for the fairness of the trial, not the culpability of the [offender]." (Internal quotation marks omitted.) *State* v. *Sherman*, 38 Conn. App. 371, 414, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995). There is no question that the sequestration order was violated in this case. The defendant's claim rests on the remedy the court imposed. In excluding McCown's testimony, the court ensured the fairness of the trial. The defendant sought to have his mother testify that his intellectual capabilities prevented him from being able to waive his constitutional rights. By having the opportunity to listen to Dinello's testimony, McCown had the ability to tailor her testimony to that of Dinello's, thereby inhibiting the truth seeking and fact-finding functions that a sequestration order seeks to ensure. McCown, after listening to the testimony of Dinello, could have shaped her testimony to conform to Dinello's observations of the defendant while he was questioning him and, thus, could have testified that the defendant usually portrayed those characteristics when he was confused or did not know what was happening around him. In *State* v. *Robinson*, 230 Conn. 591, 601, 646 A.2d 118 (1994), our Supreme Court found it probable that a correction officer who testified in violation of a sequestration order had tailored his testimony to support the testimony of his fellow officers, noting that he had a motive to shape his testimony. Equally, McCown had a motive here to modify her testimony to match Dinello's. Fairness, therefore, required the court to bar McCown from testi-

fying to ensure that the reasons for having the sequestration order were not compromised.

Even if the court's decision to prevent McCown from testifying were improper, the defendant had the opportunity to put forth the same evidence in another form. The ruling prevented only McCown from testifying, not anyone else. Thus, the court did not abuse its discretion in precluding McCown's testimony during the suppression hearing.

## II

The defendant next claims that the court improperly prevented his attorney from arguing to the jury during his closing argument about the likely effects of the defendant's age on his ability to realize the intent of others. We disagree.

The following additional facts are needed for our resolution of the defendant's claim. During the defendant's closing argument, the following exchange took place between defense counsel, the state and the court:

"[Defense Counsel]: Now, let's look at [the defendant], sixteen years old at the time, seven—

"[Prosecutor]: Objection, there's no evidence of that.

"The Court: Sustain the objection.

"[Defense Counsel]: I would just respectfully say, Your Honor, that his birthday is—

"[Prosecutor]: Objection, Your Honor, there's no evidence of that.

"The Court: Sustain the objection."

It is the defendant's contention that the court's exclusion of that aspect of his closing argument to the jury infringed on his right to be heard through counsel and

" 'deprived [him] of the full and fair participation of his counsel in the adversary process.' "

"In general, the scope of final argument lies within the sound discretion of the court . . . subject to appropriate constitutional limitations. . . . It is within the discretion of the trial court to limit the scope of final argument to prevent comment on facts that are not properly in evidence, to prevent the jury from considering matters in the realm of speculation and to prevent the jury from being influenced by improper matter that might prejudice its deliberations. . . . While we are sensitive to the discretion of the trial court in limiting argument to the actual issues of the case, tight control over argument is undesirable when counsel is precluded from raising a significant issue." (Citations omitted; internal quotation marks omitted.) *State* v. *Arline*, 223 Conn. 52, 59–60, 612 A.2d 755 (1992).

"Counsel may comment upon facts properly in evidence and upon *reasonable* inferences to be drawn from them. . . . Counsel may not, however, comment on or suggest an inference from facts not in evidence." (Emphasis in original; internal quotation marks omitted.) Id., 58.

In this case, there was no evidence presented to the jury from which it could infer that the defendant, at seventeen years of age, lacked the capacity to recognize the intent of others. Although the age of the defendant was presented to the jury, there was no mention during the course of the trial of how the defendant's age related to his inability to realize what was occurring around him. As such, the court did not abuse its discretion when it limited the scope of closing arguments to those facts that were in evidence or to the reasonable inferences that could have been drawn from those facts.

### III

The defendant finally claims that the court improperly prevented defense counsel from cross-examining

a state's witness about the circumstances of her testimony in the cases of Council and Rogers, and about what had transpired during a recess. It is the defendant's contention that the court infringed on his right to cross-examine a witness by limiting his ability to probe into the witness' credibility by ascertaining whether the state's attorney had coached the witness. We disagree.

The following additional facts are necessary for our disposition of the defendant's claim. During the testimony of Monique Little, the jury was excused to enable the court to hear counsel concerning a motion outside the jury's presence. While the jury was excused, Little became visibly upset. The court called a brief recess to allow Little to compose herself. During the recess, the state's attorney spoke with Little. While cross-examining Little, the defendant was prevented from inquiring into the substance of the conversation that occurred during the recess.

During Little's testimony in this case, a redacted version of her testimony from the two prior cases was read into evidence as prior consistent statements. On recross-examination, the defendant was prevented from inquiring into who the state's attorney was in the prior cases and how much contact Little had had with that attorney.

"The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Cepeda*, 51 Conn. App. 409, 416, 723 A.2d 331, cert. denied, 248 Conn. 912, 732 A.2d 180 (1999). "To establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination

were clearly prejudicial." (Internal quotation marks omitted.) Id., 418.

"Only relevant evidence may be elicited through cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable." (Citation omitted; internal quotation marks omitted.) Id., 416; see also 1 B. Holden & J. Daly, supra, § 67c, pp. 504–505.

"It is axiomatic that the defendant is entitled fairly and fully to confront and to cross-examine the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Citations omitted; internal quotation marks omitted.) State v. Cepeda, supra, 51 Conn. App. 415–16.

Our review of the record and transcripts reveals that the court properly limited the scope of the defendant's cross-examination of Little. Defense counsel was permitted to inquire into whether Little and the state's attorney had spoken during the recess.[10] Additionally, the defendant questioned Little about the number of conversations that she had had with the state's attorney

---

[10] The following colloquy took place between the defendant's attorney and Little:

"[Defense Counsel]: Did you talk to [the state's attorney] as recently as the last recess in the hallway?

"[Witness]: Yes."

in preparation for this case.[11] The court, however, did not allow the defendant's counsel to ask about the contents of the conversation that took place during the recess, nor was he permitted to ask about the number of times that Little had spoken with the state's attorney in preparation for her testimony in the trials of Council and Rogers.

The limitations that the court put on the scope of the cross-examination did not unconstitutionally inhibit the defendant from challenging Little's credibility. The defendant was given wide latitude to question Little about the events concerning this case and was given sufficient opportunity to probe into whether she was coached before giving her testimony in this trial. The testimony prohibited by the court had no relevance to Little's credibility, nor to the facts of this case. The court permitted Little to testify as to the number of times that she had spoken with the state's attorney regarding the instant matter. The number of times Little spoke with the state's attorney prior to other proceedings has no correlation to whether she was testifying truthfully in this case. The defendant has failed to establish that the court's restrictions clearly were prejudicial. As such, the court did not abuse its discretion in limiting the scope of the defendant's cross-examination of Little.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] The following colloquy took place between the defendant's attorney and Little:

"[Defense Counsel]: How many times did you speak to [the prosecutor] before giving your evidence today?

"[Witness]: Once.

"[Defense Counsel]: Just one time?

"[Witness]: Once or twice.

"[Defense Counsel]: Just two times or more than two times?

"[Witness]: Twice, over the phone and today at his office."