ISAAC COUNCIL *v.* COMMISSIONER OF
CORRECTION
(AC 29155)

Harper, Beach and Lavery, Js.

Argued December 8, 2008—officially released April 28, 2009

*Martha Hansen*, special public defender, for the appellant (petitioner).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Isaac Council, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly determined that the state did not argue inconsistent theories to obtain a conviction at his criminal trial and, therefore,

did not violate his right to due process. We affirm the judgment of the habeas court.

In 1997, the petitioner was convicted, following a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1), criminal possession of a firearm in violation of General Statutes § 53a-217c and possession of weapons in a motor vehicle in violation of General Statutes § 29-38. The jury found the petitioner not guilty of attempt to commit murder. He was sentenced to a total effective term of twenty-five years incarceration. Following his direct appeal, this court affirmed the judgment of conviction. See *State* v. *Council,* 48 Conn. App. 919, 714 A.2d 733, cert. denied, 245 Conn. 920, 717 A.2d 236 (1998). At the petitioner's trial the jury reasonably could have found the following facts. On November 20, 1994, the petitioner was operating a motor vehicle on County Street in New Haven. The petitioner slowed to a stop as he passed a group of people standing in front of a house. Thomas Rogers was in the front passenger seat, and Larry McCown was in the rear passenger seat of the motor vehicle. Gunshots were fired from the passenger side of the vehicle, killing one man and wounding another. The state was unable to prove who actually fired the guns, but forensic evidence established that at least two .45 caliber guns were fired from the vehicle. Each of the three occupants in the vehicle, the petitioner, Rogers and McCown, were charged under both principal and accessory theories of liability. Rogers and McCown were tried and convicted in separate trials, of, inter alia, murder and attempt to commit murder, and their convictions also were affirmed on direct appeal. See *State* v. *Rogers,* 50 Conn. App. 467, 718 A.2d 985, cert. denied, 247 Conn. 942, 723 A.2d 319 (1998); see also *State* v. *McCown,* 68 Conn. App. 815, 793 A.2d 281, cert. denied, 260 Conn. 927, 798 A.2d 972 (2002).

After the petitioner's direct appeal was affirmed, he subsequently filed a petition for a writ of habeas corpus, in which he claimed (1) ineffective assistance of trial counsel and (2) a violation of his right to due process. With regard to the latter claim, the petitioner argued that the state had relied, in his trial, on a theory of criminal liability that was inconsistent with that relied on during the trials of Rogers and McCown. On May 10, 2007, a hearing was held on the petition, at which time the petitioner withdrew his claim of ineffective assistance of counsel. As to the second count, the court rejected the petitioner's claim that his right to due process was violated and denied his petition for a writ of habeas corpus. After evaluating the prosecutorial theories relied on in the trials of the petitioner, Rogers and McCown, the court concluded that the state had not relied on either legally or factually inconsistent theories. The court further observed that each defendant was charged with the substantive crime and under a theory of accessorial liability. The court also observed that closing arguments in each trial were related to the involvement of each defendant in each prosecution, that the state could not prove the actual shooter and that the theories were not inconsistent. The court subsequently granted the petition for certification to appeal, and this appeal followed.

On appeal, the petitioner argues that his right to due process was violated because the state argued inconsistent theories at the separate trials of the petitioner, Rogers and McCown. He relies on *Smith* v. *Groose*, 205 F.3d 1045 (8th Cir.), cert. denied sub nom. *Gammon* v. *Smith*, 531 U.S. 985, 121 S. Ct. 441, 148 L. Ed. 2d 446 (2000), which held that "the use of inherently factually contradictory theories violates the principles of due process." Id., 1052. Specifically, the petitioner argues that the state's theories of who the shooter was at each

of the three trials were inconsistent and, therefore, violated his right to due process. He claims that in each of the three trials, the state argued, in closing arguments, different theories as to who were the actual shooters. At his trial, the state argued that the shooters were the petitioner and Rogers, whereas at the separate trials of McCown and Rogers, the state argued that Rogers and McCown were the shooters. Because the forensic evidence showed that only two guns were involved in the shooting, the petitioner argues that it was factually inconsistent for the state to have argued that there were three shooters when the evidence demonstrated that only two guns were involved in the incident. We disagree.

We first begin by setting forth our standard of review.[1] "[A] habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . . Whether the petitioner's right to due process of law was violated . . . however, is a mixed question of law and fact that warrants plenary review." (Citations omitted; internal quotation marks omitted.) *Milner* v. *Commissioner of Correction*, 63 Conn. App. 726, 735, 779 A.2d 156 (2001). When our review is plenary, "we must determine whether [the court's legal conclusions] are legally and logically correct and whether they find support in the facts set out in the court's [ruling] . . . ." (Internal quotation marks omitted.) *State* v. *Kimble*, 106 Conn. App. 572, 579, 942 A.2d 527, cert. denied, 287 Conn. 912, 950 A.2d 1289 (2008).

There is little Connecticut case law applicable to the issue in the petitioner's appeal. In *State* v. *Colon*, 272

[1] The petitioner claims that the appropriate standard of review is abuse of discretion because he is appealing from the judgment of the habeas court denying his petition for a writ of habeas corpus. An allegation of a violation of due process, however, is a question of law, and, accordingly, we will address it under a plenary standard of review. See *State* v. *T.R.D.*, 286 Conn. 191, 210, 942 A.2d 1000 (2008); *State* v. *Easton*, 111 Conn. App. 538, 541, 959 A.2d 1085 (2008), cert. denied, 290 Conn. 916, 965 A.2d 555 (2009).

Conn. 106, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005), the defendant relied on *Smith* v. *Groose*, supra, 205 F.3d 1045, and alleged a violation of his right to due process that was based on the state's use of inconsistent theories. In *Colon*, the defendant argued that the state engaged in prosecutorial misconduct by arguing contradictory theories regarding Virginia Quintero's role in the death of the victim, for which the state charged the defendant with murder. *State* v. *Colon*, supra, 240. Specifically, the defendant argued that his right to due process was violated because the state claimed, on one hand, that Quintero was held captive by the defendant during the time prior to the death of the victim and, on the other hand, charged Quintero with manslaughter in connection with the victim's death. Id., 240–41. The defendant relied on *Smith* v. *Groose*, supra, 1045, in support of his argument that the state's use of contradictory theories violated his right to due process. *State* v. *Colon*, supra, 241.

Our Supreme Court concluded that the defendant's reliance on *Smith* was misplaced because the defendant and Quintero were charged with two separate crimes. Specifically, the defendant had been charged with murder and Quintero had been charged with manslaughter. The court found that the state clearly had demonstrated that the defendant had killed the victim through the infliction of blunt force trauma to the victim's head, and further, that although the state claimed Quintero was not allowed to leave her apartment to seek help for the victim, it contended that Quintero could have done more to save the victim's life. Id., 244. Accordingly, the court held that the theories the prosecutor asserted against the defendant and Quintero were not factually inconsistent but, rather, the state was "attempting to hold accountable all those who contributed to the victim's death." Id. As our Supreme Court analyzed *Smith* in its decision, this court will turn to *Smith* as well.

In *Smith* v. *Groose*, supra, 205 F.3d 1049, the United States Court of Appeals for the Eighth Circuit addressed the issue of "whether the Due Process Clause forbids a state from using inconsistent, irreconcilable theories to secure convictions against two or more defendants in prosecutions for the same offenses arising out of the same event." The Eighth Circuit held that it does. Id., 1048. The facts of *Smith* involve the deaths of two homeowners during the commission of a burglary of their home. Id., 1047. The prosecution first tried the defendant, Jon Keith Smith, for first degree felony murder, armed criminal action, robbery and burglary. Id., 1048. At Smith's trial, the prosecution introduced evidence of a statement made by one of Smith's friends, Anthony Lytle, who was with Smith and two other friends at the crime scene. Id. Lytle stated to the police in December, 1983, that he heard a scuffle and then observed one of his friends bent over one of the homeowners, stabbing the homeowner with a pocketknife. Id., 1047–48. Lytle later recanted this statement; however, it was used at Smith's trial not only to impeach Lytle's in-court testimony but also as substantive evidence of Smith's guilt. Id., 1048. Smith was convicted of, inter alia, felony murder and sentenced to five terms of life imprisonment. Id.

Following Smith's trial, the state tried Michael Cunningham for the murder of the same homeowner victim as in Smith's prosecution. Id. Again, the state used a statement given by Lytle at Cunningham's trial. Id. This statement by Lytle, however, was not the December, 1983 statement used in Smith's trial but, rather, was a different statement that Lytle had given to the police in November, 1983. The November, 1983 statement indicated that the homeowner had been killed prior to the entry into the house by Lytle, Smith and their two friends. Id., 1047. Cunningham was convicted of two counts of first degree murder, two counts of armed

criminal action, one court of first degree robbery and one count of second degree burglary. Id., 1048.

After the trial and conviction of Cunningham, Smith appealed from his conviction, arguing that there was insufficient evidence to support his conviction on the basis of Lytle's recanted statement. Id. His appeal was denied. Id. Smith subsequently filed two federal habeas petitions, each with a claim of insufficient evidence, both of which were denied. After the denial of his second federal habeas petition, the Eighth Circuit granted Smith a certificate of appealability for the sole question: "Does the fact that the State secured Appellant's murder conviction on the basis of testimony from Anthony Lytle that was inconsistent with, if not diametrically opposed to, the testimony that Lytle subsequently gave at Michael Cunningham's trial . . . render Appellant's murder conviction void for want of due process?" (Internal quotation marks omitted.) Id. The court answered in the affirmative. Id.

The Eighth Circuit, in reaching its decision, discussed two cases that considered a similar issue. In *Thompson* v. *Calderon*, 120 F.3d 1045 (9th Cir. 1997) (en banc), rev'd on other grounds, 523 U.S. 538, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998), the United States Court of Appeals for the Ninth Circuit found a violation of due process when, during two separate trials of two defendants, the prosecutor argued that each defendant committed the same murder for drastically different reasons. Id., 1055. In the first trial in *Thompson*, the prosecutor pursued charges against the defendant, Thomas Martin Thompson, claiming that Thompson raped the victim and then killed her to cover up the rape. Id., 1057. In the second trial, the prosecutor pursued charges against the defendant, David Leitch, claiming that he was the only one with the motive to kill the same victim because she was preventing him from reconciling

with his former wife. Id., 1056–57. The court in *Thompson* noted that in the second murder trial, the prosecutor "returned to his original theory and discredited the very evidence he had previously offered in Thompson's trial." Id., 1059. The court stated that "it is well established that when no new significant evidence comes to light a prosecutor cannot, in order to convict two defendants at separate trials, offer inconsistent theories and facts regarding the same crime." Id., 1058. Accordingly, the court found that the defendant in the first trial, Thompson, "suffered from the due process deprivation that infected the conflicting prosecutions." Id., 1059.

The second case discussed in *Smith* was *Drake* v. *Francis*, 727 F.2d 990 (11th Cir. 1984). In the first trial in *Drake*, the prosecution argued that the defendant, William Campbell, was responsible for killing the victim. Id., 993. Whereas in the second trial, that of the defendant, Henry Arthur Drake, the prosecution argued that Campbell had such severe asthma and emphysema that he was physically unable to have delivered the fatal blows; therefore, Drake had participated in the murder of victim. Id. The United States Court of Appeals for the Eleventh Circuit found that the two theories argued at the separate defendants' trials were "fairly consistent" and that there was no violation of due process. Id., 994. The Eleventh Circuit based this conclusion on the fact that the "prosecutors had argued that both defendants played a role in the murder [and] their arguments varied only with regard to the extent of involvement . . . ." *Smith* v. *Groose*, supra, 205 F.3d 1050, citing *Drake* v. *Francis*, supra, 994.

Accordingly, the Eighth Circuit found that Smith's case was more analogous to *Thompson* than to *Drake* because "what the State claimed to be true in Smith's case it rejected in Cunningham's case, and vice versa." *Smith* v. *Groose*, supra, 205 F.3d 1050. At Smith's trial, the state argued that the murder occurred *after* Smith,

Lytle and their friends entered the house, whereas at Cunningham's trial the state argued that the murder occurred *before* Smith, Lytle and their friends entered the house. Id. As the court found that the state was arguing two inconsistent theories about when the murder had occurred and who had committed the murder, the court held that the state's reliance on inconsistent theories violated the defendant's right to due process, resulting in a fundamentally unfair trial. Id., 1051. The court specifically held that "the use of inherently factually contradictory theories violates the principles of due process." Id., 1052. The court stated further that "[t]o violate due process, an inconsistency must exist at the core of the prosecutor's cases against defendants for the same crime." Id.

In the present matter, the petitioner's reliance on *Smith* is misplaced. Unlike the prosecution in *Smith*, the state did not present completely contradictory evidence to obtain a conviction for any of the three defendants allegedly involved in the shooting. Rather, as in *Colon*, the state was attempting to hold accountable all who had participated in any way in the shooting on County Street. See *State* v. *Colon*, supra, 272 Conn. 244. The state did not reject in one case what it asserted to be true in another. See *Smith* v. *Groose*, supra, 205 F.3d 1050. Instead, the state presented the same evidence in each trial and then, in its closing arguments, varied its arguments to the extent of each defendant's involvement. See id.; *Drake* v. *Francis*, supra, 727 F.2d 994.

Our careful review of the evidence reveals the following uncontested facts. In its closing argument at the trial of Rogers, the state argued: "You can, I would suggest to you, reasonably conclude from the evidence that you've heard in this case, that the defendant was, in fact, one of the people who fired a gun on County Street. He had a motive, he had an instrumentality right after the crime, he had a gun and he talked about his

involvement in the crime. But having said that, the Judge is going to tell you that the state, under the accessory statute, does not even have to prove that he was the shooter; he could have been the driver, and you are still able to find him guilty because as long as you find, and I suggest that [this] is a reasonable conclusion for you to find, he was a criminal participant who aided and abetted the commission of this crime, the law says that if two or more people participate in a crime, they are all equally responsible as long as you find that Mr. Rogers did anything to aid or assist, whether he indirectly or directly procured this to happen, he was the shooter or did any act forming a part of this crime, he is guilty on the first count. . . . [The accessory] statute is designed precisely for this very situation when you've got people wearing masks and you've got more than one weapon and there's no way to determine if you don't recover the weapon which gun fired the [gun]shot so that the guilty people who participated in a crime like this do not go unpunished despite this reprehensible criminal conduct." Accordingly, in the state's closing argument at Rogers' trial, the state argued that it was reasonable to find that Rogers could have been a shooter on the basis of his motive, his having a gun and his discussing the crime afterward. The state also argued, however, that it was unable to determine who had fired the fatal gunshot, and, therefore, the jury only had to find that Rogers was a criminal participant to be liable as an accessory and found guilty of murder.

Seven months later, at the trial of the petitioner, the state again argued in its closing arguments: "I think you can reasonably conclude from the evidence here, from the fact that [the petitioner] had a gun, both before and after this crime occurred, that he was in fact a shooter in this case, and that we've proven a motive for him as well because of his close connection to Thomas Rogers,

and, I think, by inference, to his brother, Anthony;[2] but having said that, the state does not have to prove in this case that [the petitioner] was a shooter in this case; he could be the driver. You could find he's the driver in this case, and under the accessory statute, as the Judge is going to define for you, he's still guilty as a criminal participant in this crime, who aided and abetted, and as the Judge reads you that instruction, I would ask you to listen carefully because he's going to tell you if two or more people participate in a crime, they are equally responsible. Anything to aid or assist the commission of this murder, whether to directly or indirectly counsel someone to do this or persuade a person to do it or do any act such as drive a car, that's enough. So, I would say to you that the state does not have to prove which person in the car fired the fatal shot as long as you find [that the petitioner] was a criminal participant in the aiding of this particular crime." Accordingly, in the state's closing argument at the petitioner's trial, the state argued that it was reasonable that the petitioner could have been a shooter on the basis of his connection to Rogers and his having a gun both before and after the shooting. The state also argued, however, that it was unable to determine who fired the fatal gunshot, and, therefore, the jury only had to find that the petitioner was a criminal participant to be liable as an accessory and found guilty of murder. The state argued that the petitioner could be found guilty under the accessory statute if he was merely the driver of the car and not the actual shooter.

Last, one and one-half years later, at the trial of McCown, the state delivered a similar argument to the jury: "His own statement, ladies and gentlemen, conclusively proves, along with the other evidence that you heard in this case, that he was one of the shooters,

---

[2] The day before the shooting occurred on County Street, Rogers' brother, Anthony, was shot.

along with Mr. Rogers. Because, as you heard, all the shots came from the passenger's side of the car . . . . I think you can reasonably conclude from the evidence that this defendant was one of the two shooters. Having said that, the state does not need to prove that this defendant was the shooter who actually fired the fatal shot. In other words, whether it was Mr. Rogers who fired the fatal shot or this defendant who fired the fatal shot, the law on accessory says that as long as two or more people participate in a crime, they are equally responsible if they've done anything to aid or assist, whether directly or indirectly, people to do it or any act forming a part thereof." The state, again, was arguing the same facts as it had at the petitioner's trial but had tailored its discussion of those facts specifically to McCown. The state argued that McCown was in the rear passenger seat and that the gunshots were fired from the passenger side of the motor vehicle.

"Discrepancies based on rational inferences from ambiguous evidence will not support a due process violation provided the . . . theories are supported by consistent underlying facts." *Sifrit* v. *State*, 383 Md. 77, 106, 857 A.2d 65 (2004), cert. denied, 543 U.S. 1056, 125 S. Ct. 929, 160 L. Ed. 2d 780 (2005). "The few courts that have found due process violations did so in cases where the inconsistencies were inherent to the State's whole theory of the case or where the varying material facts were irreconcilable." Id.

The state did not rely on inconsistent theories of liability for the killing of one man and the wounding of another. The state argued that each defendant reasonably could have been the shooter and applied specific facts to specific defendants. See *Smith* v. *Groose*, supra, 205 F.3d 1050, citing *Drake* v. *Francis*, supra, 727 F.2d 994. Moreover, the state argued that each defendant was charged as an accessory and that the jury did not have to find, nor did the state have to prove, who was

the actual shooter. The state only had to prove that each defendant was a criminal participant, and the jury could assess the criminal liability of each defendant for the crimes of murder and attempt to commit murder under the theory of accessory liability. Last, it is important to note that the jury found the petitioner guilty of manslaughter, not murder, and found him not guilty of attempt to commit murder, whereas Rogers and McCown were both convicted of murder and attempt to commit murder.

We conclude, therefore, that the state did not argue what the state claimed to be true in one case and rejected in another case, but, rather, the state argued that all defendants played a role in the murder, and arguments varied only with regard to the extent of the defendants' involvement. See *Smith* v. *Groose*, supra, 205 F.3d 1050, citing *Drake* v. *Francis*, supra, 727 F.2d 994. The state did not argue inherently factually contradictory theories but, rather, introduced the same evidence at each trial and argued that all three defendants were liable under an accessory liability theory. Accordingly, we conclude that the petitioner's right to due process was not violated because the state did not argue inconsistent theories at each of the three separate trials.

The judgment is affirmed.

In this opinion the other judges concurred.