STATE OF IOWA, Appellee, v. HARLEY CARTER, Appellant.

No. 43591.

OCTOBER 27, 1936.

Jo R. Jaques and Ralph H. Munro, for appellant.

Edward L. O'Connor, Attorney General, Walter F. Maley, Asst. Attorney General, T. A. Goodson, Special Asst. Attorney General, and J. Ernest Cory, County Attorney, for appellee.

ALBERT, J.—To a fair understanding of this matter, the following statement of facts is gleaned from the record.

On December 7, 1932, a written contract was entered into between the defendant and the Iowa State Savings Bank of Fairfield for the sale of twenty-five head of cattle to the defendant, by the terms of which contract, at a later date the defendant was

to pay a sum specified, when the title was to pass and the cattle were to become his. The contract was in writing and in duplicate, the bank having one copy and the defendant the other. After this time the bank went into the hands of a receiver. Later the receiver instituted an action in the district court of Iowa in and for Jefferson county for the purpose of replevining said cattle, and it is around the facts connected with this replevin action that the basis of the criminal action originates.

It was claimed that the defendant had sold the cattle in question to his wife, and she was a party defendant to the replevin action. The defendant and his wife each filed separate answers therein. The defendant pleaded that he "paid the Iowa State Savings Bank the full consideration specified in said contract, together with interest thereon, and that said cattle thereupon became his absolute property." The wife alleges that on her information and belief Carter paid the savings bank all of the indebtedness under the alleged contract, and that she is now the lawful owner of the cattle. The answer of the defendant was signed by Ralph H. Munro, as attorney for the defendant, and the answer of the wife was signed by Richard C. Leggett, as attorney for the defendant Alice B. Carter.

In the trial of this replevin action there was introduced in evidence the duplicate of the contract of December 7, 1932, and when introduced in evidence it bore an alleged "PAID" stamp of the Iowa State Savings Bank. It is the claim of the state that this "PAID" stamp of the savings bank was a forgery, and that the defendant was guilty of uttering the same when it was produced by him in court.

The defendant made a motion for a directed verdict on the ground that the evidence was not sufficient to make a case for the jury in that the production of this instrument in court by the defendant Carter was not an uttering within the meaning of the statute. It is apparent from the record that both this defendant and his wife, in their pleadings, depended upon the plea of payment. The evidence shows that when this defendant came into court he had with him this instrument with the "PAID" stamp thereon. He was placed upon the witness stand and was examined by Attorney Leggett. So far as the record is concerned there is no showing that Munro took any part in the trial of the replevin case. In the examination of the defendant Carter as a witness, Leggett asked Carter to produce the alleged forged in-

strument, which Carter did, handed it to Leggett, who read it and turned it over to the reporter and it was marked as an exhibit in that trial. It is insisted by the defendant that this was not an uttering and publishing under the statute.

With the contention of the defendant we cannot agree. Section 13139 of the Code reads as follows:

"If any person, with intent to defraud, falsely make, alter, forge, or counterfeit any: * * *

"6. Order, acquittance, discharge, or accountable receipt for money or other valuable thing; * * *."

Section 13140 reads as follows:

"If any person utter and publish as true any record, process, certificate, deed, will, or any other instrument of writing mentioned in section 13139, knowing the same to be false, altered, forged, or counterfeited, with intent to defraud, he shall be imprisoned," etc.

■■■ The relation of the defendant Carter to the replevin action was that of defendant. The fact that he was being examined as a witness by an attorney representing his codefendant we do not think is material to the determination of this question. His interest in the replevin case was identical with that of his wife, and the fact, if it be a fact, that the paper was produced by the witness in response to a question propounded by the wife's attorney we do not think has any material bearing on the determination of the case. As a matter of fact his own defense to the replevin case rested wholly on his ability to prove that the contract was paid in full, and this alleged paid contract was just as material to his defense as it was to that of the wife. We think there was an uttering as contemplated by the statute.

Wharton's Criminal Law, 12th Ed., vol. 2, p. 1215, states the rule to be:

"To utter and publish a document is to offer directly or indirectly, by words or actions, such document as good."

We have used practically the same language in State v. Sherwood, 90 Iowa 550, 551, 58 N. W. 911, 912, 48 Am. St. Rep. 461, where we said:

"The offense of uttering and publishing is proved by evi-

dence of offering to pass the instrument to another person, declaring or asserting, directly or indirectly, by words or actions, that it is good.''

As to the identical point raised in this case, The Queen v. Radford (Crown Case Reserved) 1 Cox Criminal Cases, p. 168, holds that the exhibiting of a forged receipt to the party with whom the prisoner is claiming credit on account of that receipt is an uttering, even though the prisoner never voluntarily parted with the possession of it. In that case the prisoner owed a debt, and he claimed payment thereof by reason of a forged receipt which he showed to his creditor but refused to let the creditor touch it or have it in his possession. Later the creditor called again, and the prisoner held up the receipt for the creditor to look at but refused to part with it out of his hand. The English court, by eleven judges, held that the prisoner was properly convicted.

In Commonwealth v. Searle, 2 Bin. (Pa.) 332, 4 Am. Dec. 446, the court said, in effect, that to utter and publish is to declare or assert, directly or indirectly, by words or actions, that an instrument is good.

Many cases are cited on this proposition. See, 8 L. R. A. (N. S.) 1175, note.

The defendant, however, insists that the production of the paper in court was not voluntary on his part because of the fact that he was a witness. We do not think there is anything in this contention. It is our conclusion, therefore, that there was sufficient evidence of the uttering to take the case to the jury.

■■■ 2. In the trial of this case a number of witnesses were introduced on behalf of the state tending to show that on the 18th, 19th, 20th, and 21st of February, 1935, the defendant was in St. Louis and dealt with several persons for the purpose of procuring a duplicate of the ''PAID'' stamp of the Iowa State Savings Bank, and that he did procure a replica of such stamp. To meet this testimony the defendant introduced some thirty-six witnesses who testified that on those dates the defendant was in Fairfield, Iowa, or near thereto, and hence could not have been in St. Louis at that time. To meet this situation the court gave instruction No. 11. A part of this instruction reads as follows:

''By way of defense to this claim of the state that he was personally present in St. Louis, Missouri, at the time claimed by the state, and in connection with his defense generally to the

crime charged, the defendant relies in part upon what is known in law as an alibi—that is, that at the time it is claimed by the state he was in St. Louis, Missouri, making purchases of type and having a rubber rotary paid stamp made he was at a different place and so far away and under such circumstances that he could not have been in St. Louis, Missouri, to make such purchases. The burden of establishing an alibi is upon defendant, and if his claimed alibi hereinbefore referred to is to avail·him he must establish by the greater weight of preponderance of the evidence that at the very time the state claims he was in St. Louis, Missouri, making such purchases, he was at another place so far away or under such circumstances that he could not have been in St. Louis, Missouri, at said time. But if, upon all the evidence or lack of evidence in the entire case, including evidence seeking to establish that he was not and could not have been in St. Louis, Missouri, at the time the state claims he was, with reference to the alleged purchase by him of such rotary dater paid stamp materials, the jury entertain a reasonable doubt of defendant's guilt of the crime charged, he should be acquitted. It is recognized in the law that the defense of alibi is one easily manufactured and hard to disprove, and jurors are properly advised by the courts to scan the proofs of an alibi with care and caution.''

Objection was lodged against this instruction and we think it was error to give it. It will be noticed that the instruction refers to an alibi and limits it to the St. Louis transaction. It is true that the state's case depends largely upon the truth of the defendant's claim that he was not in St. Louis at the time in question, but that is only one of the issues in the case, and, in the first place, we do not think that in a criminal action the doctrine of alibi can be applied to one of the issues in the case. The controlling issue in the case was whether or not, at the time of the trial of the replevin case, this defendant uttered the alleged forged instrument. The defendant made no claim of alibi, and did not, and could not successfully, make a claim of alibi as to that transaction. In fact, he offered no testimony under the alibi rule as to the introduction of the questioned document into evidence in the replevin case. Elaborate arguments are presented by both sides on the question of alibi, but in each and every instance cited the alleged alibi is as against the crime

charged in the information, and cannot give us any light on the subject considered here. In other words, the state's testimony showed, as an incident in the trial, that the defendant was in St. Louis engaged in a nefarious business on certain dates. The defendant's testimony was to negative that line of testimony on the part of the state, and we cannot see where the general law of alibi has any application to this kind of a situation. It was prejudicial to the defendant because in the instruction the court told the jury that the burden of proof was on the defendant, and hence it necessarily must have been prejudicial. As a matter of fact, the burden of proof on the St. Louis transaction was on the state, and the testimony introduced by the defendant was simply testimony denying the testimony of the state.

■■■ 3. One other question is raised in the case. The defendant introduced witnesses testifying as to his reputation and good character in the community where he resided. In cross-examining these witnesses, the prosecuting attorney asked each of these character witnesses whether or not they had heard of certain specific alleged nefarious transactions of the defendant. Over the objection of the defendant the witnesses were permitted to answer the question, and in each instance the witnesses answered that they had never heard of such transactions. The real question before the court was the reputation of the defendant in the community where he resided. We have had occasion to pass upon this question several times, and the last case is State v. Wheelock, 218 Iowa 178, at page 184, 254 N. W. 313, 317. We there said:

"The witnesses were not asked whether the defendant had been involved in the specific accidents, but were asked whether they had *heard* of such matters. Reputation is made by what is said and heard. As affecting the credibility of a witness who testifies that the defendant's general reputation for general moral character is good, it is proper to inquire whether the witness has *heard* of instances of misconduct." (Citing cases.)

We think this line of testimony was permissible so long as the prosecuting attorney was acting in good faith, and we find nothing in the record to show that he was not so acting. Therefore, there is nothing in this contention on the part of the defendant.

■■■ 4. Complaint is made of the cross-examination of the

defendant when he took the witness stand. We have so often settled this question that it needs little attention. Where the defendant becomes a witness in his own behalf he is subject to the same rules regulating cross-examination and impeachment as other witnesses. We so announced in the Wheelock case, supra, in State v. Brandenberger, 151 Iowa 197, 130 N. W. 1065, and in previous cases. We have also said that the range of cross-examination is largely a matter within the discretion of the trial court. See State v. Kendall, 200 Iowa 483, 203 N. W. 806.

Some other questions are discussed, but they are not likely to arise on a retrial of the case and we give them no further attention.

For the error in giving instruction No. 11 the case is reversed.—Reversed.

PARSONS, C. J., and MITCHELL, DONEGAN, HAMILTON, ANDERSON, STIGER, RICHARDS, and KINTZINGER, JJ., concur.