**STATE of Iowa, Appellee,**

v.

**Patrick KELLEY, Appellant.**

No. 52732.

Supreme Court of Iowa.

Sept. 5, 1968.

Donald W. Sylvester, Sioux City, for appellant.

Richard C. Turner, Atty. Gen., and James C. Sell, Asst. Atty. Gen., and Edward Samore, Woodbury County Atty., for appellee.

LeGRAND, Justice.

A jury convicted defendant of forcible rape in violation of section 698.1, Code of Iowa, 1966. The conviction was based upon testimony that defendant, along with Michael Lefler and David Anderson, had sexual intercourse with a female over the age of 16 by force and against her will on October 28, 1966. Each of the men involved violated the young lady and each in turn was assisted in his crime by the other two. Although this case involves the separate trial and appeal of the defendant Patrick Kelley only, we mention the joint action and collaboration of the three because of certain objections raised to defendant's cross-examination, as will later appear.

Defendant admitted having sexual intercourse with the prosecuting witness on the night in question, and the sole issue at the trial was whether his conduct was with her consent or whether it was accomplished by force and against her will.

This appeal is here on three assignments of error as follows:

(1) The trial court erred in admitting evidence showing defendant had been in the Iowa Training School for Boys at Eldora, Iowa;

(2) The trial court erred in admitting evidence showing that defendant and his companions were members of a group known as the Leaners gang, and in requiring defendant to list the names of some of the members of that group; and

(3) The trial court erred in giving an additional instruction, after the jury had been deliberating approximately 22 hours, urging it to reach a verdict.

■ I. We consider the first two assignments of error together since they involve related questions arising out of defendant's cross-examination.

Defendant's objections involve another interpretation of section 781.13, Code of Iowa, which provides:

"When the defendant testifies in his own behalf, he shall be subject to cross-examination as an ordinary witness, but the State shall be strictly confined therein to the matters testified to in the examination in chief."

This section has been before us on numerous occasions. Our previous decisions have established that a defendant who offers himself as a witness subjects himself to the same rules on impeachment and credibility as other witnesses. He stands on the same footing as any other witness regarding his memory, history, motives and credibility. State v. Brandenberger, 151 Iowa 197, 204, 130 N.W. 1065, 1068; State v. Bittner, 209 Iowa 109, 118, 227 N.W. 601, 605; State v. Carter, 222 Iowa 474, 481, 269 N.W. 445, 449; State v. Brown, 253 Iowa 658, 669, 113 N.W.2d

286, 293; State v. Frese, 256 Iowa 289, 292, 127 N.W.2d 83, 85.

■ The manner in which, and the extent to which, cross-examination of a defendant may be pursued is largely a matter of the trial court's discretion and its rulings will be disturbed only upon a clear showing that such discretion has been abused. State v. Wheelock, 218 Iowa 178, 183, 254 N.W. 313, 316; State v. Ragona, 232 Iowa 700, 703, 5 N.W.2d 907, 909; State v. Drosos, 253 Iowa 1152, 1162, 114 N.W.2d 526, 531; State v. Myers, 257 Iowa 857, 861, 135 N.W.2d 73, 76; State v. Bittner, supra, 209 Iowa 109, 118, 227 N.W. 601, 605; State v. Van Voltenburg, 260 Iowa 200, 147 NW.2d 869, 874.

■ Defendant's examination in chief was very brief. He related certain matters of his early history and stated he had spent "most of his life" in Sioux City. He also testified he had graduated from East High School in Sioux City in 1964.

On cross-examination defendant again stated he graduated from East High School but did not go to school all three years there. Then the following ensued:

"Q. You went somewhere else, didn't you? A. Yes.

"Q. Where did you go to school? Mr. Galvin: This is objected to, on the ground that it is immaterial. It's improper cross-examination. The Court: Only for purposes of impeachment, he may answer.

"Q. Where did you go to school, Mr. Kelley? A. I went to Wentworth Military Academy and Iowa Training School for Boys.

"Q. Where are these schools located? A. Wentworth is in Lexington, Missouri and Iowa Training School is in Eldora, Iowa."

It is now claimed the answer referring to defendant's commitment to the Iowa Training School at Eldora is so prejudicial as to require a new trial. Under the circumstances existing here, there was no reversible error in the trial court's ruling.

On direct examination the defendant had answered questions phrased to limit his reply to those matters about his early life and education which were thought to be favorable to him. This is proper trial strategy, but it cannot serve to prevent the State from inquiring into the same matters to show other circumstances which, perhaps, do not reflect complete credit on the defendant. State v. Davis, 212 Iowa 582, 593, 234 N.W. 858, 863.

Here the challenged portion of defendant's cross-examination covered the same matter and the identical period of time which were the subject of his direct examination. If it was important for defendant to show he finished high school and graduated from East High, it is equally proper to show the circumstances of his educational background culminating in that event.

The questions concerning defendant's attendance at other schools were legitimate extensions of his direct examination. Such questions do not become objectionable simply because the answers are damaging to defendant's cause. State v. Brandenberger, supra.

Defendant relies on State v. Collins, 246 Iowa 989, 69 N.W.2d 31, but that case is clearly distinguishable. There the cross-examination elicited an admission of commitment to the Iowa Training School thirteen years prior to the trial. The opinion held this was too remote to be helpful in testing the defendant's credibility. We further said such inquiry was improper cross-examination since it was not related to the defendant's testimony in chief.

Neither of these reasons prohibits the cross-examination objected to here. The Collins case lends no support to defendant's argument.

■ The other issue involved in defendant's cross-examination is the testimony

concerning his membership in a gang which frequented one of the city parks late at night. Without objection defendant testified that he had known Lefler and Anderson, the other two involved in this incident with him, for some years and that they were often at the park late at night and into the morning. Then the following cross-examination took place:

"Q. In fact, the three of you, at least, and a few others are known as the Park Gang. Mr. Galvin: This is objected to on the ground it is improper examination. It's argumentative. The Court: Overruled. * * *

"Q. Am I right, Mr. Kelley? A. I don't know what other people call us, but I don't consider myself a gang or in a gang.

"Q. You are known as The Leaners? A. It used to be The Leaners a long time ago.

"Q. You were part of The Leaners yourself, weren't you, if you're not now? A. I am one of the group, yes."

In this connection we point out Lefler and Anderson were with defendant on the night the crime was committed. There was evidence they participated in it with him. Under these circumstances evidence of the relationship of these three young men to each other, their habits, their character and their past conduct was properly admissible as bearing upon defendant's credibility and motives.

■ Objection is also made that defendant was obliged to list the names of some of those, besides himself, Lefler and Anderson, who were members of the so-called Leaners gang. Assuming, as defendant claims, this testimony to have been irrelevant, we find no prejudice from its admission. Defendant had already testified to the existence of such a group and to its approximate number. The additional recitation of the names of some of the individual members added nothing to this testimony. There is

no claim they were so notorious or of such evil reputation that their mere identification would be prejudicial.

We find no reversible error in the trial court's rulings discussed herein.

■ II. The sole remaining assignment of error concerns the giving of the so-called verdict-urging instruction. After the jury had been deliberating for approximately 22 hours, the trial court gave an additional instruction, substantially in the form approved by the Iowa State Bar Association Uniform Instruction No. 1.1, which urged the jury to consider carefully all of the arguments and to listen attentively to the differing opinions of the members of the jury in a conscientious attempt to reach a verdict.

Some two and a half hours later the jury returned a verdict of guilty.

On several occasions we have held the giving of such an instruction is not error unless it has a coercive effect on the jury.

The trial court has considerable discretion in determining whether it should be given, and each case must be decided on its own circumstances. The ultimate test, as we said in Coulthard v. Kennan, 256 Iowa 890, 897, 129 N.W.2d 597, 601, is whether it forced or helped to force an agreement, or merely started a new train of real deliberation which ended the disagreement.

There is nothing here to suggest coercion. Although the jury deliberation was quite long, there is no suggestion its physical needs and comfort were not adequately provided for. The length of deliberation after the additional instruction indicates further worthwhile consideration before a verdict was agreed to.

We find no reversible error here. As support for our conclusion, see Coulthard v. Keenan, supra; State v. Bogardus, 188 Iowa 1293, 1299, 1301, 176 N.W. 327, 329 and citations; Gibbs v. Wilmeth, Iowa, 157 N.W.2d 93, 100.

For the reasons set out herein the judgment of the trial court is affirmed.

Affirmed.

All Justices concur except BECKER, J., who dissents and RAWLINGS and MASON, JJ., who dissent to Division II.

RAWLINGS, Justice, (dissenting).

Division II of the majority opinion places the stamp of approval on the giving of post-submission verdict-urging instructions. With this I cannot agree and therefore respectfully dissent.

The instruction with which we are here dealing is commonly known as the "Allen Charge". See Allen v. United States, (1896), 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528.

In State v. Peirce, 178 Iowa 417, 159 N.W. 1050, this court, in effect, urged caution in the use of such an instruction and in so doing said, loc. cit., 178 Iowa 427, 159 N.W. 1055: "The only practical general rule that may be worked out from all this is that, where the disagreement is of more than ordinary and usual duration, and after the giving of such an instruction as this a verdict is reached in a time short in comparison with the duration of the disagreement, a presumption arises that the instruction was prejudicial; that, to use the words of the Clemens case (Clemens v. Chicago, R. I. & P. R. Co., 163 Iowa 499, 144 N.W. 354), there should be a reversal where in such circumstances 'there is no competent evidence in the record to indicate that the jurors * * * were brought to a final agreement resulting in a verdict, other than through the coercive influence of this instruction, and the long hours of involuntary servitude to which they were subjected, with the tentative suggestion of longer confinement in the event they failed to agree.' "

In Green v. United States (5 Cir.), 309 F.2d 852, 854, the giving of verdict-urging instructions was condemned with this appropriate statement: "The Allen or 'dynamite' charge is designed to blast loose a deadlocked jury. There is small, if any, justification for its use. Nevertheless, an old decision of the Supreme Court has upheld the charge as a reminder to jurors that 'they should listen, with a disposition to be convinced, to each other's argument.' Allen v. United States, 1896, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528. This is the outermost limit of its permissible use. There is no justification whatever for its coercive use. The jury system rests in good part on the assumption that the jurors should deliberate patiently and long, if necessary, and arrive at a verdict—if, but only if, they can do so conscientiously. It is improper for the court to interfere with the jury by pressuring a minority of the jurors to sacrifice their conscientious scruples for the sake of reaching agreement."

More recently the American Bar Association Committee on the Criminal Trial, Standards Relating to Trial by Jury, page 145, advocated adoption of the following standard:

"5.4 Length of deliberations; deadlocked jury.

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

"(i) that in order to return a verdict, each juror must agree thereto;

"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

"(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

"(v) that no juror should surrender his honest conviction as to the weight or

effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

"(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

"(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement."

And at page 146 is this commentary on the foregoing standard:

"Section 5.4(a)

"For the reasons set forth in the Commentary to section 5.4(b), infra, the Advisory Committee has concluded that the instruction commonly referred to as the *Allen* charge or 'dynamite charge' should

not be given to a jury which has been unable to agree after some deliberations. Nonetheless, it is most appropriate for the court to instruct the jury initially as to the nature of its duties in the course of deliberations, and section 5.4(a) so provides. The standard does not require the use of any particular language, but does identify the five points on which the jury might properly be advised."

This American Bar Association committee proposal, quoted supra, would in my humble opinion serve to eliminate that vice which is inherent in any verdict-urging instruction given in a criminal case after the jury has once started its deliberations.

In support of the foregoing see also State v. Thomas, 86 Ariz. 161, 342 P.2d 197, 200, and dissent in Huffman v. United States (5 Cir.), 297 F.2d 754, 759.

I would reverse and remand for new trial.

MASON and BECKER, JJ., join in this dissent.