# IN THE COURT OF APPEALS OF IOWA

No. 13-2033
Filed May 20, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**AMY JO PARMER,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Marsha M. Beckelman, Judge.

Amy Parmer appeals her convictions for involuntary manslaughter by public offense and child endangerment resulting in death for the death of her paramour's seventeen-month-old child. **AFFIRMED.**

Wallace L. Taylor of Law Offices of Wallace L. Taylor, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Heather R. Quick (until withdrawal) and Kevin Cmelik, Assistant Attorney General, Jerry Vander Sanden, County Attorney, and Nicholas Maybanks and Lisa Epp, Assistant County Attorneys, for appellee.

Heard by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DOYLE, J.**

Amy Parmer appeals her convictions and sentences for involuntary manslaughter by commission of a public offense and child endangerment resulting in death, asserting the district court erred in numerous respects. Upon our review, we affirm.

### I. Background Facts and Proceedings.

This case arose from the tragic death of a toddler. Seventeen-month-old K.S. was brought to the hospital on Sunday, March 21, 2010, after she sustained extensive critical, non-accidental injuries. After examinations by various physicians, and CT scans, it was determined the child's condition was very grave—the child had serious brain injuries, including severe brain swelling and extensive brain bruising and bleeding. Neurosurgical surgeries and other interventions were performed to attempt to control the brain swelling but were unsuccessful. The child was then placed in a medically-induced coma as a last attempt to reduce the intracranial pressure, but the pressure did not cease. On March 28, life support was withdrawn and K.S. died shortly thereafter.

On July 11, 2011, defendant Amy Parmer and her then paramour, Zyriah Schlitter, the child's father, were charged with first-degree murder and child endangerment resulting in death for the death of the child. Tried separately, Parmer and Schlitter were each found guilty by juries of the lesser-included offense of involuntary manslaughter by commission of a public offense, as well as child endangerment resulting in death. Each was sentenced to an indeterminate term of fifty years.

Schlitter appealed, and we affirmed his convictions and sentence. *See State v. Schlitter*, No. 13-0346, 2014 WL 5475500, at *1-14 (Iowa Ct. App. Oct. 29. 2014). There, we set forth detailed facts established at Schlitter's trial, viewed in the light most favorable to his verdict. *See id.* Ultimately, we concluded, among other things: "After trial from December 3-21, 2012, creating over 2400 pages of transcript, the jury assessed the credibility of thirty-nine witnesses. A reasonable jury could find Schlitter guilty beyond a reasonable doubt . . . ." *Id.* at *23.

Parmer now appeals her convictions and sentences, following a similarly long jury trial. She asserts the district court erred in numerous respects, specifically in (1) allowing State to present inconsistent theories in her and Schlitter's separate trials; (2) allowing an expert witness to testify after his testimony "materially changed" from his prior testimony without notice to Parmer; (3) not allowing into evidence Schlitter's prior statement; (4) allowing alternate theories of child endangerment to go to the jury; (5) giving an "*Allen* charge" to the jury; (6) denying her motion for acquittal; and (7) denying her motion for a new trial. The State contends Parmer failed to preserve several of her claims for review on appeal, but it argues that in any event, each claim fails on its merits. We address Parmer's arguments in turn.

## II. Discussion.

### A. Inconsistent Theories.

Parmer asserts the State offered "diametrically opposite" theories and facts regarding the same crime—the death of the child—at her and Schlitter's individual trials in order to convict both of them, denying her constitutional right of

due process. Specifically, Parmer maintains the State at her trial: (1) argued she committed physical abuse on the child on March 21, when the State argued at Schlitter's trial that he was the perpetrator; (2) "embraced a Sunday/Monday pattern of bruising in opening statement . . . that it rejected in [Schlitter's] trial"; (3) "attempted to lessen the probative value of [Schlitter's] jealousy of [Parmer's other paramour, Cameron Hines,] as [Schlitter's] motive that it explored in [Schlitter's] trial"; and (4) "attempted to make [her] failure to go to [the hospital] suspicious when it made clear in [Schlitter's] trial that [Parmer] could not go to [the hospital]." Parmer argues that it is a denial of due process of law for a prosecutor, in order to convict two defendants at separate trials, to offer inconsistent theories and facts regarding the same crime. Our review of alleged violations of constitutional rights is de novo. *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015).

In support of her contention, Parmer relies on the Eighth Circuit's decision in *Smith v. Groose*, 205 F.3d 1045 (8th Cir. 2000), as well as *State v. Watkins*, 659 N.W.2d 526, 532 (Iowa 2003), which discussed *Smith*. In *Watkins*, our supreme court recognized the "right of the prosecution to rely on alternative theories in criminal prosecutions albeit that they may be inconsistent." 659 N.W.2d at 532. However, the court, examining *Smith*, found a "narrow exception" to that right existed where the prosecution's "selective use of evidence . . . in order to establish inconsistent factual contentions in separate criminal prosecutions for the same crime [is] so egregious and lacking in good faith" it must constitute "a denial of due process." *Id.* The Eighth Circuit in *Smith* explicitly stated it did "not hold that prosecutors must present precisely the same

evidence and theories in trials for different defendants. Rather, [it held] only that the use of inherently factually contradictory theories violates the principles of due process." 205 F.3d at 1052. Moreover, the appellate court explained that for there to be a due process violation, "an inconsistency must exist *at the core of the prosecutor's cases* against defendants for the same crime." *Id.* (emphasis added). Additionally, our supreme court has noted a safeguard against abuse exists "as a result of the prosecution's burden to prove any theory it asserts by evidence beyond a reasonable doubt." *Watkins*, 659 N.W.2d at 532.

Other jurisdictions' courts typically follow the Eighth Circuit's requirement that the factual inconsistencies go "to the core" of the prosecutor's case for there to be a due process violation. *See* Brandon Buskey, *If the Convictions Don't Fit, You Must Acquit: Examining the Constitutional Limitations on the State's Pursuit of Inconsistent Criminal Prosecutions*, 36 N.Y.U. Rev. L. & Soc. Change 311, 327 (2012) (and cases cited therein) (hereinafter "Buskey"); *see also Sifrit v. State*, 857 A.2d 65, 81 (Md. Ct. App. 2004) ("The theme requiring an inconsistency at the core of the State's case before finding a due process violation runs throughout the majority of cases that have addressed the issue."). Though there are other disagreements among jurisdictions as to the exact proof required or who may assert the due process violation—i.e., one defendant or both defendants—"courts have plainly coalesced around the fair trial model to resolve such prosecutorial inconsistency claims." Buskey, 36 N.Y.U. Rev. L. & Soc. Change at 328-29. As the Sixth Circuit recently explained:

> A criminal defendant has the right to a fair proceeding in front of an impartial factfinder based on reliable evidence. [She] does not have the right to prevent a prosecutor from arguing a justifiable

> inference from a complete evidentiary record, even if the prosecutor has argued for a different inference from the then-complete evidentiary record in another case.

*Stumpf v. Robinson*, 722 F.3d 739, 751 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 905 (2014).

Here, even assuming without deciding the State *did* present inconsistent theories at the two separate trials—though we are unconvinced the theories presented were inconsistent—Parmer has failed to establish those "inconsistent" theories were "so egregious and lacking in good faith" that she was denied due process. Parmer testified at her trial, which occurred *after* Schlitter's trial, and she had an opportunity to address all of these issues at trial before the jury. Parmer does not allege that the State withheld critical evidence or made unfair inferences from unambiguous evidence. *See id.* 749. As one appellate court pointed out in a similar case, "[t]he few courts that have found due process violations did so in cases where the inconsistencies were inherent to the State's whole theory of the case or where the varying material facts were irreconcilable." *Council v. Comm'r of Correction*, 968 A.2d 483, 489 (Conn. Ct. App. 2009). A due process violation does not occur where the "discrepancies" are "based on rational inferences from ambiguous evidence" and the "theories are supported by consistent underlying facts." *Id.*

In Parmer's trial, the State clearly argued and presented evidence that Parmer and/or Schlitter could have been responsible for the final blows causing the child's ultimate fatal injuries or the other blows this child received in the weeks and days leading up to that fatal day. Moreover, Parmer was able to testify and challenge before the jury all of the issues she raises here. Finally, it is

important to note that the jury found Parmer guilty of involuntary manslaughter, not murder. Upon our de novo review of the record, we find the inconsistences alleged by Parmer were based on rational inferences from ambiguous evidence and accordingly conclude Parmer's due process rights were not violated.

### B. *Expert Witness Testimony*.

Parmer next argues the district court erred in allowing a doctor to testify for the State "when [the doctor's] testimony materially changed from prior testimony without any notice to the defense." Specifically, Parmer maintains Dr. Gary Baumbach gave different opinions of when he believed various injuries to the child occurred in his deposition testimony, compared to his testimony in Schlitter's trial, compared to his testimony in Parmer's trial. She asserts she was "caught by surprise by Dr. Baumbach's change in testimony" and asserts the district court should have granted her motion for a mistrial. The State argues Parmer failed to preserve error on this issue, but it alternatively argues Parmer mischaracterizes Dr. Baumbach's testimony as "changed." Our review of the district court's rulings on the admissibility of evidence and discovery issues is for abuse of discretion. *State v. Edouard*, 854 N.W.2d 421, 431 (Iowa 2014); *State v. Schuler*, 774 N.W.2d 294, 297 (Iowa 2009).

It is true that the minutes of testimony filed by the State with the trial information must supply a "full and fair statement" of anticipated testimony. *See* Iowa R. Crim. P. 2.5(3). However, this obligation "does not require the State to use precision in composing the expected testimony of each witness named in the minutes" but rather "mandates the prosecutor to adequately alert the defendant to the source and nature of the testimony, and place [the] defendant on notice of

the need for further investigation of the particular details of the witness's expected testimony." *State v. Wells*, 522 N.W.2d 304, 307 (Iowa Ct. App. 1994). Reviewing Dr. Baumbach's testimony in the record, we agree with the State that Parmer mischaracterizes that doctor's testimony. His is not an exact science— he gave an opinion as to when the injuries occurred that was generally consistent with the other expert's testimony, as well as his own testimony. While the doctor did not repeat verbatim the exact times he expressed in his deposition or even in Schlitter's trial, his testimony was consistent with the original and additional minutes of testimony provided by the State, as well as with his opinion that the child's *second*, fatal injury occurred within twelve to twenty-four hours before the child was brought to the hospital. We find Parmer had fair notice of Dr. Baumbach's testimony.

Additionally, as the State points out, the credibility of witnesses is generally left to the jury, "allowing it to resolve inconsistencies as it sees fit." *State v. Mitchell*, 568 N.W.2d 493, 503, 504 (Iowa 1997). While there are some limitations upon the rule, such as where the testimony of a witness is "so impossible, absurd, or self-contradictory that the court should deem it a nullity," courts generally stop short of nullifying testimony when a change in testimony is explained or justified. *See id.* at 503. Here, Parmer was able to depose Dr. Baumbach before trial. She also had the additional benefit of the doctor's testimony in Schlitter's trial. With two separate instances of testimony, Parmer was able to cross-examine Dr. Baumbach at her trial to call into question his opinion and point out the inconsistencies in his testimony to bolster her argument that the final injuries did not occur when the child was in her care. The jury was

aware of the inconsistencies, and it found Parmer guilty of a lesser-included offense. We therefore find the district court did not abuse its discretion in permitting Dr. Baumbach to testify.

### C. Schlitter's Prior Statement.

Parmer argues the district court erred in denying her attempt to introduce a statement contained in a police report made by Schlitter that Schlitter "stated that when he was at [Parmer's] apartment, [Schlitter] was responsible for the discipline of [his child], and that at most, [Parmer] would tell her no and try to redirect her and that he felt [Parmer] was great with [the child] and that she loved [the child]." The district court excluded the hearsay statement, finding it did not constitute a statement against penal interest under Iowa Rule of Evidence 5.804(b)(3), which provides:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

As noted above, our review of rulings on the admissibility of evidence is for an abuse of discretion. *Edouard*, 854 N.W.2d at 431.

In *State v. Paredes*, the Iowa Supreme Court determined, after a detailed analysis of rule 5.804(b), that the complained of witness's statements were made against interest. 775 N.W.2d 554, 568 (Iowa 2009). In that case, the witness stated the charged defendant "did not do it," that he "would not hurt the baby," that [the witness] "does not want [the defendant, her boyfriend,] to take the fall"

for the child's injuries, that [the defendant] "is not that kind of guy, not violent," and that he "did not take care of the baby that much." The court explained:

> Considered in isolation, these statements merely exculpate Paredes, but they are plainly self-inculpatory when considered in context. Except for a brief fifteen-minute interval when the baby was cared for by Paredes' sister, Millard and Paredes were the infant's only caregivers when the injuries were inflicted. As a result, by making statements tending to exculpate Paredes, Millard was indirectly implicating herself as the person who caused the injuries. These statements were not hypothetical when evaluated in the proper context.

*Id.* at 568-69. In finding the witness's statements amounted to statements against interest under the rule, the court also considered the fact the witness made statements that were directly inculpatory, and statements that tended to shift responsibility away from Paredes and toward the witness. *Id.* at 569. *Paredes* is clearly distinguishable from the present case.

Here, considered in context, the hearsay statement is not an exculpatory statement against interest like the ones made in *Paredes*. That Schlitter stated he was the child's disciplinarian when he was at Parmer's apartment and he believed Parmer loved the child did not so far "tend" to subject Schlitter to criminal liability such that a reasonable person would not have made them unless they were true. Schlitter's statement did not tend to shift responsibility away from Parmer. When Schlitter spent weekends at Parmer's apartment, it was Parmer that cared for K.S. during those times Schlitter was absent attending a financial class. The district court did not err in determining the statement-against-penal-interest hearsay exception did not apply to Schlitter's statement in the police report. In any event, and in light of all the evidence, if it was error to exclude the statement, it was harmless error because the statement referenced times when

Schlitter and Parmer were together with the child, and the evidence reflects there were times when only Parmer was providing the child's care and discipline.

### D.  Allen Charge.

Here, after the jury had deliberated for four days, it advised the court late on Friday, September 20, 2013, that it had reached a verdict on the child endangerment charge but could not reach a verdict on the murder charge.  The court, over Parmer's objection, determined the jury should go home for the weekend and return the following Monday.  The court advised the parties that the first thing it would do the following Monday morning was give the jury an instruction encouraging it to reach a verdict, commonly known as an *Allen* charge.[1]  The following Monday, the court gave the jury the following charge:

> You have been deliberating on this case for a considerable period of time, and the Court deems it proper to advise you further in regard to the desirability of agreement, if possible.  The case has been exhaustively and carefully tried by both sides and has been submitted to you for decision and verdict, if possible.  It is the law that a unanimous verdict is required; and while this verdict must be the conclusion of each juror and not mere acquiescence of the jurors in order to reach an agreement, it is still necessary for all jurors to examine the issues and questions submitted to them with candor and fairness and with a proper regard for, and deference to, the opinion of each other.  A proper regard for the judgment of others will greatly aid us in forming our own judgment.
>
> Each juror should listen to the arguments of other jurors with a disposition to be convinced by them; and if the members of the jury differ in their views of the evidence, such difference of opinion should cause them to scrutinize the evidence more closely and to reexamine the grounds of their problem.  Your duty is to decide the issues of fact which have been submitted to you, if you can conscientiously do so.  In conferring, you should lay aside all mere pride of opinion and should bear in mind that the jury room is no place for espousing and maintaining, in a spirit of controversy, either side of a cause.  The aim ever to be kept in view is the truth

---

[1] The common name for the verdict-urging or "dynamite" instructions comes from *Allen v. United States,* 164 U.S. 492, 501 (1896),

as it appears from the evidence, examined in the light of the instructions of the Court.

You will again retire to your jury room and examine your differences in the spirit of fairness and candor and try to arrive at a verdict.

Approximately two hours later, the jury returned its guilty verdicts.

Parmer argues the jury's prompt response on Monday after deliberating for four days the prior week evidences the jury was coerced by the *Allen* charge. We disagree.

Our supreme court has refused to say giving a so-called *Allen* charge is per se error. *State v. Cornell*, 266 N.W.2d 15, 19 (Iowa 1978). In fact, district courts enjoy wide latitude to deliver verdict-urging instructions in response to a reported deadlock by the jury. *See State v. Campbell*, 294 N.W.2d 803, 808-09 (Iowa 1980). But such a supplemental instruction may not improperly coerce a verdict. *Id.* at 808. "The ultimate test is whether the instruction improperly coerced or helped coerce a verdict or merely initiated a new train of real deliberation which terminated the disagreement." *Id.* A supplemental instruction will be evaluated in context and considering all the circumstances. *See State v. Wright*, 772 N.W.2d 774, 778 (Iowa Ct. App. 2009). *Allen* instructions should not discuss the expense of litigation, the numerical split of the jury, or direct jurors in the minority to reevaluate their thought processes. *See Campbell*, 294 N.W.2d at 809. The instruction given here avoids those pitfalls. The overall language is strikingly similar to the *Campbell* instruction. *See id.* (advising the jury its verdict "must be the conclusion of each juror and not a mere acquiescence of the jurors in order to reach an agreement").

The additional deliberation time from the giving of the Allen charge to verdict was the same in this case as in *Campbell*, 294 N.W.2d at 811. In *State v. Kelley*, 161 N.W.2d 123, 126 (Iowa 1968), the court found no coercion from a similar time frame. *See also State v. Power*, No. 13-0052, 2014 WL 2600214, at *5 (Iowa Ct. App. June 11, 2014). We conclude the district court did not abuse its discretion in giving the supplemental instruction at issue here.

### E. Submitting Alternate Theories of Child Endangerment.

The offense of child endangerment sets forth different ways in which the offense can be committed in multiple subsections. *See* Iowa Code § 726.6 (2013). In its child endangerment instruction to the jury, the district court submitted four subsections of section 726.6 as possible ways Parmer could have committed the offense. Parmer challenges three of the four subsections submitted under that section: (a) "Knowingly acts in a manner that creates a substantial risk to a child or minor's physical, mental or emotional health or safety"; (d) "Willfully deprives a child or minor of . . . health care or supervision . . . when the person is reasonably able to make the necessary provisions and which deprivation substantially harms the child or minor's physical, mental or emotional health," including "the failure to provide specific medical treatment"; and (e) "Knowingly permits the continuing physical . . . abuse of a child or minor."

As to subsections (a) and (e), Parmer first argues the language of those subsections is unconstitutionally vague as applied to her, asserting that just about any type of conduct could fall within their scope. The State argues Parmer failed to preserve error on the constitutional challenge, asserting Parmer should

have raised the issue in a pretrial motion. *See State v. Milner*, 571 N.W.2d 7, 12 (Iowa 1977). Since we find no merit to Parmer's constitutional challenge, we elect to bypass the error preservation issue.

"In assessing whether a statute is void-for-vagueness this court employs a presumption of constitutionality and will give the statute any reasonable construction to uphold it." *State v. Showens*, 845 N.W.2d 436, 441 (Iowa 2014) (citation and internal quotation marks omitted). We are mindful statutes are cloaked with a presumption of constitutionality, and Parmer bears the heavy burden of proving the statute is unconstitutional beyond a reasonable doubt and refuting every reasonable basis upon which it could be found to be constitutional. *See State v. Thompson*, 836 N.W.2d 470, 483 (Iowa 2013). Further, if the statute is capable of being construed in more than one manner, we will adopt the one that construes the statute as constitutional. *Id.*

Because this is an as-applied challenge, the question is limited to whether the statute is void as applied to Parmer's actions. *See State v. Anspach*, 627 N.W.2d 227, 233 (Iowa 2001). "Section 726.6(1)(a) requires a showing of substantial risk to a child's physical health or safety. It does not require proof that the conduct was negligent or reckless, although such actions may create a substantial risk." *Id.* at 232. Similarly, subsection (e) requires a showing that the person knowingly permitted the continuing physical abuse of a child. *See* Iowa Code § 721(1)(e).

Here, Parmer maintains "the State never presented any evidence as to what risk the child was exposed to or how [she] exposed the child to any risk." This flies in the face of reason. The overwhelming evidence produced at trial

was that the child was repeatedly physically abused, which ultimately led to her death. The evidence presented suggested Parmer was the person that inflicted the abuse, but if she was not the abuser, she knew of the abuse and did nothing to prevent it or seek medical help for the injured child. The child was in Parmer's care on March 21, 2010, and Parmer testified she gave the child a bath prior to lying the child down. She testified she took the child's clothes off for the bath, but she did not notice any additional bruises on the child's body, beyond bruising on the child's face. However, beyond the marks upon the child's face, the child was covered in significant bruises. For instance, the child had "multiple bruising on the left upper arm starting from the vicinity of the shoulder going down," and those bruises were different colors suggesting the bruises were caused at different times. There were bruises on the child's leg that were blue evidencing "relatively deeper bruises" caused by "significant force." The described bruises and injuries go on and need not be repeated here. As one of the child's physician's testified, the child's caretakers—Parmer and Schlitter—"must have been aware of what had happened to the child" but chose "[n]ot to seek medical care." This child suffered horribly, and if Parmer did not cause it, she knew of the abuse and did nothing to prevent it nor sought out medical care for the injuries leading up to the child's last day in her care. A reasonable person would be aware that beating a seventeen-month-old baby in this manner is a "significant risk," or doing nothing to prevent the beatings or helping the child get medical help when the child is unable to do so for herself, fall within those acts or omissions prohibited by section 726.6. The language is sufficient to alert the

average person that such conduct and omission of conduct is prohibited. *See Anspach*, 627 N.W.2d at 232.

For the same reasons, we reject Parmer's arguments that there was insufficient evidence to submit these theories to the jury as possible ways Parmer committed the offense of child endangerment. "Parties to a lawsuit are entitled to have their legal theories submitted to the jury if such theories are supported by substantial evidence." *State v. Hogrefe*, 557 N.W.2d 871, 876 (Iowa 1996). If reasonable minds would accept the evidence as adequate to reach a conclusion, it is substantial to support a jury instruction. *Id.* We view the evidence in the light most favorable to the party requesting the instruction. *Id.* The failure to give an instruction does not warrant a reversal unless it results in prejudice. *Beyer v. Todd*, 601 N.W.2d 35, 38 (Iowa 1999).

Parmer argues she "did not have a legal duty to provide medical care" for the child, and she notes she was not the child's parent or legal guardian, suggesting she did not have to do anything. However, a duty to provide medical care is not required. *See* Iowa Code § 726.6. Rather, this statute explicitly makes it a crime for a "person having . . . control over a child" to willfully deprive a child of health care or to knowingly permit the continuing physical abuse of a child. *Id.* § 726.6(d), (e). Our supreme court in *Anspach*, cited by Parmer, rejected a similar argument where a driver of a vehicle drove recklessly with unrelated children and their parents in his vehicle. 627 N.W.2d at 234. The court found he could be convicted of child endangerment, explaining:

> The statute clearly does not limit its reach to only those with custody of the child, i.e., the child's parents, legal guardian, or babysitter. It was rewritten in 1985 to include those adults having

"control" over the child as well. 1985 Iowa Acts ch. 180, § 3. The term control has a broader meaning than custody. *State v. Johnson*, 528 N.W.2d 638, 640-41 (Iowa 1995).

. . . .

. . . Here, Anspach had control over the instrumentality contributing to the risk to the children in the truck. As such, we agree with the district court that the meaning of control "applies to a person who has the ability to control the risk that the statute prohibits."

Further, the statute does not limit the applicability of the control element to only those times when a guardian or someone with custody is not present.

*Id.* at 235. Not quite fourteen years have passed since *Anspach*, and the legislature has not amended the statute to change the *Anspach* court's interpretation. *See Welch v. Iowa Dep't of Transp.*, 801 N.W.2d 590, 600 (Iowa 2011) ("'The legislature is presumed to know the state of the law, including case law, at the time it enacts a statute.'" (quoting *State v. Jones*, 298 N.W.2d 296, 298 (Iowa 1980))). This can be interpreted as a "tacit approval of [the] decision." *See Drahaus v. State*, 584 N.W.2d 270, 276 (Iowa 1998) (holding that where the legislature has failed to amend a statute in response to a particular interpretation of the statute announced by the court, it is presumed that the "legislature has acquiesced in that interpretation").

Substantial evidence presented by the State clearly supported submission of these theories of child endangerment to the jury. We therefore conclude the district court did not err in submitting the instruction to the jury.

### F. Motion for Judgment of Acquittal.

"A motion for judgment of acquittal is a means of challenging the sufficiency of the evidence, and we review such claims for correction of errors at law." *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010). Guilty verdicts "must

be supported by substantial evidence," which is "that upon which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Id.* We are to consider all the evidence, that which detracts from the verdict, as well as that supporting the verdict, in our review. *Id.* We "view the evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (citation and internal quotation marks omitted). Circumstantial evidence is equally as probative as direct evidence in assessing the sufficiency of the evidence. *State v. Vaughan*, 859 N.W.2d 492, 497 (Iowa 2015). It is the task of the jury to resolve questions of fact and assess the credibility of witnesses. *State v. Mills*, 458 N.W.2d 395, 397 (Iowa Ct. App. 1990). A fact finder is not required to accept a defendant's version of the facts. *Id.* "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury was free to reject certain evidence, and credit other evidence." *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006).

Parmer contends there was not substantial evidence to support her convictions. She asserts the State made vague allegations and innuendo, rather than establishing the necessary elements for her convictions. She incredulously states: "The most that the State proved was that [the child] suffered blunt force trauma. There was absolutely no evidence that either [Parmer or Schlitter] inflicted any injuries on [the child]." Given that Parmer concedes the child suffered blunt force trauma, the very issue in this case was who inflicted that trauma, as the seventeen-month-old child was unable to speak for herself. Upon our review of the record, viewing the evidence in the light most favorable to the

State, we find the circumstantial evidence in the present case was substantial to convince a rational fact-finder of Parmer's guilt beyond a reasonable doubt.

The child's last injuries occurred during times the child was in her care. Moreover, Parmer expressed anger towards the child to others, and two witnesses testified she confessed to them that she killed the child. The jury was free to accept or reject Parmer's testimony, as well as other witnesses' testimony. Clearly it did not find Parmer credible, though it did determine she committed an offense lesser than murder. Based on our review of the evidence in the record, we conclude the district court properly denied Parmer's motion for judgment of acquittal because substantial evidence supports both of her convictions.

### G. *Motion For A New Trial*.

Finally, Parmer asserts the district court abused its discretion in denying her motion for new trial, asserting the jury's verdict is contrary to the weight of the evidence and a miscarriage of justice "may have resulted." In support of her contention, Parmer challenges the district court's lack of discussion as to why it determined the weight of the evidence supported the verdict, but she does not point to any evidence she believes the court ignored. The State points out Parmer's curt argument on this point, and it asserts she has therefore waived error on this claim on appeal. *See* Iowa R. App. P. 6.903(2)(g)(3) (stating the argument section shall include "[a]n argument containing the appellant's contentions and the reasons for them with citations to the authorities relied on and references to the pertinent parts of the record . . . [and f]ailure to cite authority in support of an issue may be deemed waiver of that issue"). "A

skeletal 'argument', really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Even assuming without deciding that Parmer preserved error, her claim fails on its merits.

The district court has broad discretion when ruling on motions for a new trial in which the defendant alleges the verdict is contrary to the weight of the evidence, and we review its decision for an abuse of that discretion. *Nitcher*, 720 N.W.2d at 559. The weight-of-the-evidence standard differs from the sufficiency-of-the-evidence standard in that the district court does not view the evidence from a standpoint most favorable to the government. *State v. Taylor*, 689 N.W.2d 116, 134 (Iowa 2004). Instead, the court weighs the evidence and considers the credibility of the witnesses. *Id.* While it has the discretion to grant a new trial where a verdict rendered by the jury is contrary to law or evidence, the court should do so only "carefully or sparingly." *Id.* The district court is not to disturb the jury's verdict "against any mere doubt of its correctness." *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003). In our review, we limit ourselves to the question of whether the trial court abused its discretion; we do not consider the underlying question of whether the verdict is against the weight of the evidence. *Id.* Accordingly, to prevail on this claim, Parmer must demonstrate the court "exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *See id.* at 202.

Our review of the record evidenced that the greater weight of the evidence presented during the trial preponderated in favor of the jury's verdicts. The testimony by the physicians in the case as to the child's significant bruising,

which Parmer stated she did not see, Parmer's inconsistent statements, coupled with witness's statements as to Parmer's anger towards the child and Parmer's confessions all support the jury's verdicts. We conclude the district court did not abuse its discretion by determining the greater weight of the evidence supported the jury verdicts and denying Parmer's motion for a new trial.

### III. Conclusion.

For all of these reasons, we affirm Parmer's convictions and sentences.

**AFFIRMED.**